## EMPIRE TRUST CO. v. HOEY, Collector of Internal Revenue.

### No. 174.

Circuit Court of Appeals, Second Circuit.
April 17, 1939.

Leon E. Spencer, Sp. Asst. to Atty. Gen. (William L. Lynch, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Hughes, Richards, Hubbard & Ewing, of New York City (Francis C. Reed, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The defendant, a collector of internal revenue, appeals from a judgment against him for excise taxes, collected by him on July 31, 1935, under color of Tit. 8, § 800, Schedule A 2, of the Revenue Act of 1926, 44 Stat. 9, 99, 101, 26 U.S.C.A. §§ 900, 902 (a). That section imposed a tax "for and in respect of the several * * * documents * * * described in Schedule A"; and Schedule A imposed a tax of ten cents "on each original issue * * * of * * * certificates * * * of interest in property * * * by any investment trust * * * on each $100 of par or face value * * * of the certificates * * * Provided, that where su¡ch * * * certificates are issued without par or face value, the tax shall be 10 cents * * * per share * * * unless the actual value is less than $100 per share, in which case the tax shall be 2 cents * ∷ * on each $20 of actual value, or fraction thereof". The question is whether certain "certificates", issued by the plaintiff, had a "par or face value". The plaintiff bought and affixed stamps upon all certificates which it issued at their "actual value"; it asserted that they had no "par or face" value. The defendant collected

the difference between the tax, two cents, so assessed upon their "actual value", and $1.20, collectible upon a "par value" of $1200; and the judgment against him was for that amount.

The plaintiff was the successor of the Independent Fund of North America, under a deed executed on July 1, 1931, between the Fund and The Bank of America National Association. As provided in this deed, the Fund sold to its customers "certificates" in consideration, either of a single payment in full at the time of delivery, or of a partial payment of $10, and a promise to make 119 future monthly payments. The Fund turned over the money to the Bank, which used it, and the future payments as made, to buy "Cumulative Trust Shares" for the customer, which it held in trust for him. "Cumulative Trust Shares" were themselves only certificates of ownership in an investment trust; so that it resulted that the customer became cestui que trust of the Bank which was itself cestui que trust of another trustee who held the only res—a block of common shares in various corporations. Each "Cumulative Trust Share" was for one fifty-thousandth of one of these blocks.

The installment certificates sold to customers under this plan were in the following form. They declared that "in consideration of the undertaking and agreement" of M. or N., "to make * * * one hundred and twenty (120) equal monthly payments, the receipt of the first one of which, totalling ten dollars, is hereby acknowledged, the Bank * * * agrees to purchase * * * Cumulative Trust Shares at the prevailing price thereof at the time of receipt by the Trustee of each of said payments * * * and to hold such Trust Shares in trust for the Beneficiary". If the customer kept up his payments until maturity, (1) he might require the Bank to sell the shares, which it was holding for him, and pay him the proceeds; or (2) he might demand the shares themselves; or (3) he might leave them with the Bank. He also had the first two of these options at any time before completion of his payments. A large number of these certificates were issued, and a smaller number of those in which the whole price was paid down on delivery. The Commissioner of Internal Revenue first ruled that the installment certificates had no "par or face" value, and he therefore fixed the tax at two cents, measured by the amount paid at

issue, $10. Later, he changed this ruling, held that they had a "par" value equal to the sum of the payments, and taxed them at $1.20, ten cents for each $100. The collector's answer has gone even further, and, as a "partial defense", now alleges that each monthly payment of $10 by a customer was in effect a new issue of the certificate upon which a tax of two cents was imposed, thus making $2.40 due upon each certificate.

■ This last position is very clearly untenable. The tax is imposed "on each original issue", and a certificate is issued only once. Whatever tax is due, is due at that time; for it is an excise upon the act of issuance. Either the certificate has a "par or face value" of $1,200, or the Commissioner's first ruling was right. These certificates are like common shares in that they represent an interest in property not measured in dollars; and they may have a "par" value, just as a common share usually has. Such certainly were those certificates for which the customer paid in full at issuance: he got an equitable interest in "Cumulative Trust Shares", measured, then at least, by the amount which he paid, which was spread upon the face of the certificates. That was very close to what one gets who buys a common share in a company; indeed, until comparatively modern times it was generally said that a cestui que trust had no more interest in the res than a share-holder: he had only a chose in action. The fact that the statute classes together shares and certificates in investment trusts, leaves no room for doubt about this.

The installment certificates were like those fully paid as to the first installment paid down, but as to the future ones, they were merely contracts to make monthly payments to the Bank which it should turn into shares and hold in trust. Hence when issued, the certificates were not for any present interest in property, except to the extent of $10. Nevertheless, no new certificates were to be issued as the payments succeeded each other, and those outstanding came progressively to represent larger and larger interests. The tax, however, was to be imposed only once, as we have seen, and if it was not intended to be upon all the interests which the certificate would eventually represent, the customer who paid in one installment would pay twelve times as much as he who paid in installments. It seems to us that we can avoid this obvious miscarriage of the intent of the act, by reading the phrase "certificates * * * of interest in property" as being equivalent to "certificates of present or future interest in property". That does not contradict a syllable of the text, and fulfills what must have been its purpose. It was the document that was taxed, not the property which it described: all that was necessary was that it should state in dollars the amount paid for that property when it first came to represent it.

■ A subsidiary point is this. Out of the sum received by the Bank it paid a percentage to the Fund as compensation for its services. In the case of those certificates which were paid in one installment, the question is whether the tax should be calculated upon the amount paid by the customer, or upon the balance invested by the Bank. The "par" is what appears on the face of the certificates. There is no more reason to deduct the Fund's compensation than there would be to deduct an underwriting commission taken out of the proceeds of a sale of corporate shares.

Judgment reversed: complaint dismissed.