## UNITED STATES v. NATIONAL SUGAR REFINING CO.

United States District Court
S. D. New York.
April 30, 1953.

J. Edward Lumbard, Jr., U. S. Atty., New York City, for plaintiff (Henry L. Glenn, Asst. U. S. Atty., New York City, of counsel).

Cravath, Swaine & Moore, New York City, for defendant (George G. Tyler,

Richard L. Musgrave, Albert Rosenblum, New York City, of counsel).

LEIBELL, District Judge.

This is an action under section 1802(a) [1] of the Internal Revenue Code to collect a stamp tax on shares allegedly "issued in a recapitalization" of the defendant on December 31, 1947. The action was commenced December 29, 1952. The facts are not in dispute. Defendant moved for a summary judgment and the plaintiff has made a cross motion for the same relief.

The secretary of the defendant, a New Jersey corporation, has made affidavit as follows:

"2. On November 20, 1947, at a special meeting of defendant's Board of Directors regularly convened and held, a quorum then being present, the following resolution was adopted:

"'Resolved that, upon the liquidation of Pennsylvania Sugar Company, the amount of $9,000,000 of the surplus of this Company [The National Sugar Refining Company] consisting of $2,632,529.46 from capital surplus and $6,367,470.54 from earned surplus, be transferred to capital account and that the surplus so transferred, namely $15 for each issued share, including treasury shares, of the capital stock without par value of this Company, be treated as capital in respect of such shares of capital stock making the total amount of such capital $40 per share; * *' The above-quoted resolution has been at all times since November 20, 1947, and now is, in full force and effect.

"3. On December 31, 1947, Pennsylvania was liquidated and all of its assets distributed to defendant as a creditor and its sole stockholder.

"4. During the period from 1929 to date, the issued and outstanding capital stock of defendant has consisted of 600,000 shares of no par value. On and prior to December 31, 1947, defendant's capital was $15,000,000, or $25 for each of said 600,000 shares.

"5. On December 31, 1947, defendant, pursuant to the aforesaid resolution, transferred $9,000,000 to its capital account from its capital surplus and earned surplus accounts, making the

1. "§ 1802. Capital stock (and similar interests)

"(a) Original issue. On each original issue, whether on organization or reorganization, of shares or certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, or by any investment trust or similar organization (or by any person on behalf of such investment trust or similar organization) holding or dealing in any of the instruments mentioned or described in this subsection or section 1801 (whether or not such investment trust or similar organization constitutes a corporation within the meaning of this title), on each $100 of par or face value or fraction thereof of the certificates issued by such corporation or by such investment trust or similar organization (or of the shares where no certificates were issued), 11 cents: *Provided*, That where such shares or certificates are issued without par or face value, the tax shall be 11 cents per share (corporate share, or investment trust or other organization share, as the case may be), unless the actual value is in excess of $100 per share; in which case the tax shall be 11 cents on each $100 of actual value or fraction thereof of such certificates (or of the shares where no certificates were issued), or unless the actual value is less than $100 per share, in which case the tax shall be 3 cents on each $20 of actual value, or fraction thereof, of such certificates (or of the shares where no certificates were issued): *Provided further*, That where such certificates (or shares, where no certificates are issued) are issued in a recapitalization, the tax payable shall be that proportion of the tax computed on such certificates or shares issued in the recapitalization that the amount dedicated as capital for the first time by the recapitalization, whether by a transfer of earned surplus or otherwise, bears to the total par value (or actual value if no par stock) of such certificates or shares issued in the recapitalization. The stamps representing the tax imposed by this subsection shall be attached to the stock books or corresponding records of the organization and not to the certificates issued." 26 U.S.C.A. § 1802(a).

amount of its capital $24,000,000, or $40 for each of said 600,000 shares.

"6. Defendant has not issued any shares or certificates of stock in respect of the aforesaid transfer of $9,000,000 to capital account.

"7. Attached hereto and made a part hereof is the form of certificate evidencing shares of defendant's capital stock in use prior to, and at all times subsequent to, the aforesaid transfer of $9,000,000 to capital account. No change or modification whatsoever was made in such form of certificate as the result of such increase."

The form of stock certificate certifies that (blank) "is the owner of (one hundred) fully paid and nonassessable shares without nominal or par value of the Capital Stock of The National Sugar Refining Company, transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this certificate properly endorsed. This certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar". The certificate bore a number and the signatures of its president and treasurer.

The Comptroller of The National Sugar Refining Company has made affidavit as follows:

"2. During the period from 1929 to date, the issued and outstanding capital stock of defendant has consisted of 600,000 shares of no par value. On and prior to December 31, 1947, defendant's capital was $15,000,000, or $25 for each of said 600,000 shares.

"3. On December 31, 1947, defendant increased the amount of its capital account from $15,000,000 to $24,000,000 by transferring thereto from its capital surplus and earned surplus accounts $9,000,000, of which $2,632,529.46 was transferred from its capital surplus account and $6,367,470.54 was transferred from its earned surplus account.

"4. The aforesaid increase in defendant's capital account was accomplished pursuant to authorization of defendant's Board of Directors without any issue of additional shares of stock or certificates therefor and by means of the following bookkeeping entries dated December 31, 1947, made on defendant's journal:

" 'JV–20–0—Capital Surplus of Subsidiary (Pennsylvania Sugar Company) received in Liquidation $2,632,529.46

Capital Stock $2,632,529.46

To transfer the former to Capitol Stock pursuant to a resolution of the Board of Directors adopted on November 20, 1947.

JV–24–0—Earned Surplus—Unappropriated $6,367,470.54

Capital Stock $6,367,470.54

To transfer to the latter from earned surplus an amount required to increase (after transfer from Capital surplus of $2,632,529.46) capital stock by $9,000,000. The capital stock after this transfer will be stated at 600,000 shares at a stated value of $40. per share of $24,000,000. This transfer was authorized by the Board of Directors in a resolution adopted on November 20, 1947.'

"5. Defendant did not affix any Federal documentary tax stamps to its stock books or corresponding records, nor did defendant pay any documentary stamps taxes in respect of the aforesaid

increase in the amount of its capital account."

■ These statements of defendant's officers are undisputed. Indeed, plaintiff's notice of motion is based upon the plead-

ings "and the papers submitted in support of defendant's motion for summary judgment". This is a proper case for summary judgment under rule 56(c) F.R.Civ.Proc., 28 U.S.C.A. There is "no genuine issue as to any material fact". Motions for summary judgment are not uncommon in cases dealing with taxation.

The particular part of section 1802(a) involved in this case is the second proviso in relation to certificates or shares "issued in a recapitalization". That proviso was added August 8, 1947. It was remedial, intended to remove certain inequities. House Report No. 969, July 17, 1947 (U.S.Code Cong.Service; 80th Congress, First Session, 1947, p. 1683) refers to this situation, as follows:

"At present, in some cases, the tax imposed under section 1802 on capital stock issues, once levied, must be reimposed upon part of a new capital stock issue."

The House Bill had the support of the Treasury Department, whose Acting Secretary wrote the Chairman of the House Committee on July 10, 1947, as follows:

"The bill proposes to amend section 1802(a), supra, relating to the stamp tax on issues of capital stock and similar interests, so as to limit the tax on the issuance of certificates (or shares, where no certificates are issued), in those cases where new and additional capital is introduced to the capital stock accounts, to an amount calculated on the basis of the earned surplus or other capital which for the first time is dedicated as capital. The tax imposed by this section of the Internal Revenue Code is laid on each original issue of shares or certificates of stock. Corporations, when adjusting their capital structure, frequently transfer surplus or other new capital to one or more of their capital stock accounts and issue new shares against the sum total of the old and new capital. In this situation there is no alternative under the present law to taxing as an original issue all the shares or certificates of stock so issued. The proposed amend-

ment will avoid the reimposing of a tax on the amount of capital which has previously been subject to the original issue tax as imposed by section 1802(a), supra, by specifically providing that the tax shall be limited to a tax calculated on that amount which for the first time is dedicated as capital."

That paragraph shows the purpose of the August 8, 1947 amendment. It is intended to apply only to corporations which "when adjusting their capital structure" make a transfer of surplus or other new capital to a stock account "and issue new shares against the sum total of the old and new capital".

The remedial purpose of the August 1947 amendment of section 1802(a) of the Code was referred to in United States v. California Electric Power Co., 9 Cir., 187 F.2d 313 at page 318, as follows: "Congress recognized that the application of § 1802(a) as it existed prior to 1947 resulted in what might be termed double taxation in certain instances and amended the section to eliminate that situation. The amendment has no retroactive effect".

Section 1802(a) is a tax on an original issue of capital stock. It is not a tax on an addition to capital, made by a transfer from surplus to capital, where no new stock is issued. The cases show that the stamp tax is, as L. Hand, C. J., put it, "an excise upon the act of issuance", to be imposed only once when the original certificate is issued. Empire Trust Co. v. Hoey, 2 Cir., 103 F.2d 430 at page 432. The scope of the tax is described in section 133.20 of the Regulations of the Internal Revenue Bureau [T. 26, Parts 80 to 169, C.F.R.1949 edition] as follows:

"Section 1802(a) imposes a tax upon each original issue of certificates (or shares when issued without certificate) of stock * * *. The tax applies to each original issue of the shares or certificates * * *. The tax also applies to shares or certificates issued in a recapitalization where the recapitalization results in the dedication of an amount as capital for the first time."

Regulation § 113.23(e) states:

"(e) *Stock issued on or after August 8, 1947, in a recapitalization.* Where stock is issued on or after August 8, 1947, in a recapitalization, the tax payable is that proportion of the total tax computed with respect to all the shares or certificates so issued that the amount dedicated as capital for the first time by the recapitalization, whether by a transfer of earned surplus or otherwise, bears to the total par value (or actual value if no par stock) of the shares or certificates so issued.

"(1) A tax is not payable with respect to stock issued in a recapitalization unless the recapitalization results in the dedication of an amount as capital which amount is so dedicated for the first time."

Section 113.26 of the Regulations states:

"§ 113.26 *Stamps to be affixed to stock book.* The requisite revenue stamps must be affixed to the stock book or corresponding record of the organization and not to the certificates issued. For this purpose, ordinary documentary stamps shall be used. For provisions relating to cancellation of stamps, see § 113.133."

The constant repetition of the words "issue" and "issued" in these Regulations emphasizes the point that it is when shares or certificates are issued that the stamp tax impinges on the transaction. An increase in the capital of a corporation by the transfer of part of its earned surplus to the capital account for its outstanding shares of no par value stock does not require the corporation to pay a stamp tax under section 1802(a), if no shares or certificates are issued as part of the transaction. But if shares or certificates are subsequently issued against the increase in capital thus created, a stamp tax under section 1802(a) would, I believe, become payable. Unless there are both the addition to capital and the issuance of new shares or certificates under the recapitalization, no stamp tax is payable under section 1802(a) as amended August 8, 1947.

If the Congress had intended that a tax should be imposed on an increase of capital resulting from a transfer of earned surplus to capital it would have said so. If this fact situation constitutes an unforeseen "loophole" in the tax structure, in particular section 1802(2) of the Internal Revenue Act, the Congress can take care of that also.

The defendant's motion for summary judgment is granted and the complaint is dismissed. The government's cross motion for summary judgment is, of course, denied.

Settle an order promptly.