**UNITED STATES of America, Appellant,**

v.

**ARCHER–DANIELS–MIDLAND COMPANY, a corporation, Appellee.**

**No. 15539.**

United States Court of Appeals Eighth Circuit.

April 11, 1957.

Karl Schmeidler, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., George E. MacKinnon, U. S. Atty., and Alex Dim, Asst. U. S. Atty., St. Paul, Minn., on the brief), for appellant.

George D. McClintock, Jr., Minneapolis, Minn. (Hayner N. Larson, Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, WOODROUGH, Circuit Judge, and DONOVAN, District Judge.

GARDNER, Chief Judge.

Taxpayer, a Delaware corporation, on June 20, 1949, pursuant to resolution of its board of directors transferred from its capital surplus account the amount of $1,269,706.49 and from its earned surplus account the amount of $21,688,254.-55 to its capital stock account, which transfer resulted in making its capital stock account $32,694,960. It issued no additional stock or shares to its stockholders. Following this transaction and on or about the 29th day of August, 1951, the Commissioner of Internal Revenue purporting to act under authority conferred by Section 1802(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1802(a) assessed a documentary stamp tax in the amount of $34,436.91 against taxpayer.

After due protest taxpayer paid the documentary stamp tax so assessed and duly filed a claim for refund which in due course was disallowed. Taxpayer then brought this action for a refund of taxes so paid by it. The basic facts were all stipulated and the court entered its findings based on the stipulated facts and concluded as a matter of law that the transfer of funds from taxpayer's capital surplus account and earned surplus account to its capital stock account was not a taxable transaction and accordingly entered judgment in favor of taxpayer for the recovery of said $34,436.91 so paid on account of the illegal tax levy by the Commissioner. The facts will be further developed in the course of this opinion.

The government seeks reversal on substantially the following ground: that taxpayer's dedication of amounts from its capital surplus and earned surplus accounts to its common stock account constituted an original issue of shares and/or of profits and/or of interest in property or accumulations taxable under Section 1802(a) of the Internal Revenue Code of 1939.

■ The taxpayer being a Delaware corporation, we must look to the statute of that state for the law controlling its internal government. The statute of Delaware providing for the transfer from surplus to capital reads as follows:

"The capital of the corporation may be increased from time to time by resolution of the Board of Directors directing that a portion of the net assets of the corporation in excess of the amount so determined to be capital be transferred to capital account." Section 14, Chapter 65, Revised Code of Delaware of 1935, 8 Del.C. § 154.

Manifestly, the transfer here was in strict compliance with the provision of the Delaware statute. In this connection it is to be noted that the directors of the taxpayer, with the approval of the stockholders, could restore the amount to surplus and again make it legally available for dividends, Section 28, Chapter 65, Revised Code of Delaware of 1935, 8 Del. C. § 244, which, of course, could not be done had the company issued stock or shares to its stockholders upon the transfer to its capital stock account.

■ It is the contention of the government that the levy of the documentary stamp tax finds authority in Section

1802(a) of the Internal Revenue Code of 1939 which so far as here pertinent imposes a tax as follows: "On each original issue, whether on organization or reorganization, of shares or certificates of stock, or of profits, or of interest in property or accumulations * * *." In this connection we call attention to Treasury Regulations under this provision of the statute. Section 113.20 of the Regulations states that Section 1802(a) "imposes a tax upon each original *issue* of certificates (or shares when *issued* without certificates)." Section 113.22 of the Regulations provides that "Stock is deemed to be *issued* when it is subscribed for and the subscription is accepted." Section 113.23 of the Regulations specifically requires that "A separate computation of tax must be made with respect to each certificate regardless of the number of certificates which may be *issued* in a single transaction," and provides that the subscription is the basis of the tax when shares are *issued* without certificates. Section 113.24 of the Regulations is entitled *"Issues* subject to tax." Section 113.25 is entitled, *"Issues* not subject to tax." Section 113.26 of the Regulations requires the stamps to be affixed to the stock book and "not the certificates *issued."* It should be noted that not only in the statute but in the Regulations the word "issue" or "issued" is consistently repeated. In the instant case we may well consider what the resolution of the directors with reference to the transfer of surplus funds to the capital stock account did not do. It did not increase the number of shares; it did not provide for the issuance of additional shares or certificates; it did not alter, change or affect the then outstanding certificates and it did not purport to create or grant to stockholders any new or additional rights. Not only did the resolution of the directors make no such provision but the transfer as provided created no new or additional shares or certificates of stock, nor did there result from such transfer any change or modification whatsoever in the number or form of certificates evidencing shares of taxpayer's common stock. This was a mere bookkeeping transaction and no one was enriched or impoverished by this transfer of funds. The situation in this regard is well reflected in the court's findings where among other things it is said:

"IV

"Archer-Daniels-Midland Company did not issue or create any additional shares of its capital stock by reason of said transfer of Capital Surplus and Earned Surplus to Capital Stock account.

"V

"Archer-Daniels-Midland Company has not at any time issued any shares or certificates of stock in respect to said transfer of Capital Surplus and Earned Surplus to its Capital Stock account.

"VI

"No change or modification whatsoever was made in the form of certificate evidencing shares of common stock of Archer-Daniels-Midland Company.

"VII

"Archer-Daniels-Midland Company had 1,634,748 shares of common stock outstanding immediately before said transfer of Capital Surplus and Earned Surplus to Capital Stock account and the same number immediately after such transaction took place."

We are in accord with the decision of the trial court that these sections impose a tax upon the issuance of shares or certificates and not upon a transfer of surplus to capital and this view finds support in the following cases: American Steel Foundries v. Sauber, 7 Cir., 239 F. 2d 300; United States v. National Sugar Refining Co., D.C.S.D.N.Y., 113 F.Supp. 157; F. & M. Schaefer Brewing Co. v. United States, D.C.E.D.N.Y., 130 F. Supp. 322; Empire Trust Co. v. Hoey, 2 Cir., 103 F.2d 430; United States Steel Corp. v. United States, Ct.Cl., 142 F.

Supp. 948. In American Steel Foundries v. Sauber, supra, the facts so far as material to the issues here involved were identical with the facts in the instant case. The government there, as here, contended that a dedication of an amount from a corporation's surplus accounts to its capital stock account constitutes an issue of shares under Section 1802(a) of the Internal Revenue Code of 1939, regardless of whether such a dedication is accompanied by an increase in the number of shares outstanding or by a physical delivery to the stockholders of new or different certificates. In disposing of this contention of the government the court, inter alia, said:

"The basic question here presented is what constitutes an issuance of shares.

"Taxpayer points out that the word 'share' denotes a portion of something such as a corporation's assets and earnings. The statute speaks of an 'original issue * * * of shares'. After the transfer from the surplus account to the capital stock account the capital of the corporation was divided into the same number of shares as before, and each of such shares represented the same portion and interest in the corporation's assets and earnings as before.

"We think the transfer of surplus to capital in the present case did not result in the creation of any new or additional interest in the corporation. The number of plaintiff's outstanding shares and the percentage of its assets and earnings represented by each of said shares were not affected in any way by the transfer. The capital of the corporation was divided into the same number of shares after the increase in stated capital as before, and each of such shares represented the same portion and interest in the corporation's assets and earnings as before.

"We know of no authority and none has been cited to us sustaining the position of the government in this case. On the other hand, there are three District Court cases in addition to the decision in this case in the court below which sustain the position of the taxpayer.

"In United States v. National Sugar Refining Co., D.C.N.Y.1953, 113 F.Supp. 157, the taxpayer corporation had transferred nine million dollars from its surplus to its capital account without creating or delivering new certificates of stock or modifying the certificates then outstanding. The court granted the taxpayer's motion for summary judgment holding that a mere transfer of surplus to capital and an increase in the stated value of the outstanding no-par value shares of the taxpayer did not constitute an issuance of shares within the meaning of Section 1802(a) and that consequently no stamp tax was due. The court said, 113 F.Supp. at page 160: 'Section 1802(a) is a tax on an original issue of capital stock. It is not a tax on an addition to capital, made by a transfer from surplus to capital, where no new stock is issued. The cases show that the stamp tax is, as L. Hand, C. J., put it, "an excise upon the act of issuance", to be imposed only once when the original certificate is issued.'

"The National Sugar Refining Company case was approved and followed in F. & M. Schaefer Brewing Co. v. United States of America, D.C.N.Y.1955, 130 F.Supp. 322. In the Schaefer Company case as in the case at bar, the corporation had increased the stated value of its no par value preferred stock by a transfer of surplus to capital without issuing new or additional certificates and without amending the certificates then outstanding. The Court held there was no liability under the documentary stamp tax."

We are in entire accord with the decision of the Seventh Circuit in American

Steel Foundries v. Sauber, supra, and the authorities therein cited. The judgment appealed from is therefore affirmed.