# UNITED STATES *v.* F. & M. SCHAEFER BREWING CO.

No. 79. Argued January 6, 1958.—Decided April 7, 1958.

*Leonard B. Sand* argued the cause for the United States. With him on the briefs were *Solicitor General Rankin, Acting Assistant Attorney General Stull* and *I. Henry Kutz. Roger Fisher* was also on a brief for the United States.

*Thomas C. Burke* argued the cause for respondent. With him on the brief was *Walter S. Orr.*

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

This case presents questions concerning the timeliness of an appeal by the Government from a summary judgment of a District Court to the Court of Appeals in an action for the recovery of money only. The basic question presented is which of two series of judicial and ministerial acts—one on April 14 and the other on May 24, 1955—constituted the "judgment" and "entry of the judgment." If it was the former, the appeal was out of time, but if the latter, it was not.

The overt facts are clear and undisputed. Respondent sued the Government for $7,189.57, alleged to have been illegally assessed and collected from it as federal stamp taxes, and for interest thereon from the date of payment. After issue was joined, respondent moved for summary judgment. The district judge, after hearing the motion,

filed an opinion on April 14, 1955 (130 F. Supp. 322), in which, after finding that respondent had paid stamp taxes to the Government in the amount of $7,012.50 and interest in the amount of $177.07, but making no finding of the date or dates of payment, he referred to an earlier decision of the same legal question by his colleague, Judge Leibell, in *United States* v. *National Sugar Refining Co.,* 113 F. Supp. 157, and concluded, saying: "I am in agreement with Judge Leibell's analysis and, accordingly, the plaintiff's motion is granted." Thereupon, the clerk made the following notation in the civil docket: "April 14, 1955. Rayfiel, *J.* Decision rendered on motion for summary judgment. Motion granted. See opinion on file."

Thereafter, on May 24, 1955, counsel for *respondent* presented to the judge, and the latter signed and filed, a formal document captioned "Judgment," which referred to the motion and the hearing of it and to the "opinion" of April 14, and then,

> "ORDERED, ADJUDGED AND DECREED that the plaintiff, The F. & M. Schaefer Brewing Co., recover of the defendant, United States of America, the sum of $7,189.57 and interest thereon from February 19, 1954 in the amount of $542.80, together with costs as taxed by the Clerk of the Court in the sum of $37, aggregating the sum of $7,769.37, and that plaintiff have judgment against defendant therefor."

On the same day the clerk stamped the document "Judgment Rendered: Dated: May 24th, 1955," and made the following notation in the civil docket:

> "May 24, 1955. Rayfiel, *J.* Judgment filed and docketed against defendant in the sum of $7189.57 with interest of $542.80 together with costs $37 amounting in all to $7769.37. Bill of Costs attached to judgment."

On July 21, 1955, the Government filed its notice of appeal from the order "entered in this action on May 25th, 1955 . . . ." Thereafter, respondent moved to dismiss the appeal upon the ground that the opinion of April 14 constituted the "judgment," that the clerk's entry of that date constituted "entry of the judgment," and that the appeal was not taken within 60 days from the "entry of the judgment," as required by Rule 73 (a).[1] The Court of Appeals, holding that the opinion of April 14 was a "decisive and complete act of adjudication," and that the notation made by the clerk in the civil docket on that date constituted "entry of the judgment" within the meaning of Rule 58 and adequately disclosed the "substance" of the judgment as required by Rule 79 (a), sustained the motion and dismissed the appeal as untimely. 236 F. 2d 889. Because of an asserted conflict among the circuits[2] and the public importance of the proper interpretation and uniform application of the provisions of the Federal Rules governing the time within

[1] Unless otherwise stated, all references herein to Rules are to the Federal Rules of Civil Procedure.

[2] The First Circuit in *United States* v. *Higginson,* 238 F. 2d 439, declined to follow the Second Circuit's opinion in the instant case, unless the latter may be said to rest upon local Rule 10 (a) of the Southern and Eastern Districts of New York, providing, in part, that a "memorandum of the determination of a motion, signed by the judge, shall constitute the order," and concluded: "To the extent that the language of the Schaefer opinion might apply even where no such local rule exists, this decision is not in accord with it." *Id.,* at 443. In its later case of *Matteson* v. *United States,* 240 F. 2d 517, the Second Circuit makes clear that it regards the *Higginson* opinion as in conflict with its opinion in the instant case, saying: "Since we viewed the local rule as merely corroborative of the practice actually required by F. R. 58, Judge Hartigan's opinion must be taken as disapproving our reasoning." *Id.,* at 518.

The Fourth Circuit's opinion in *Papanikolaou* v. *Atlantic Freighters,* 232 F. 2d 663, also appears, in result at least, to be in conflict with the Second Circuit's opinion in the instant case.

which appeals may be taken from judgments of District Courts in actions for money only tried without a jury, we granted certiorari. 353 U. S. 907.

Stated summarily, the Government contends (1) that practical considerations require that a final judgment be contained in a separate document so labeled; (2) that the district judge's opinion did not contain any of the elements of a final judgment for money nor manifest an intention that it was to be his final act in the case; (3) that it was only the formal judgment of May 24 which awarded any sum of money to respondent and which invoked the provisions of Rule 58, saying "When the court directs that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction"; (4) that where, as here, a formal judgment is signed and filed by the judge it is *prima facie* his final decision, and, inasmuch as nothing in his opinion indicated any contrary intention, the formal "judgment" constituted his final decision; and (5) that the notation made by the clerk in the civil docket on April 14 did not indicate an award of any sum of money to respondent and, therefore, did not "show . . . the substance of [a money] judgment of the court," as required by Rule 79 (a) and, hence, did not constitute "the entry of [a] judgment" for money, within the meaning of Rule 58, nor start the running of the time to appeal under Rule 73 (a).

Resolution of these contentions depends principally upon the proper construction and application of the pertinent provisions of Rules 58 and 79 (a). Rule 58, in pertinent part, provides:

> "When the *court directs* that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith *upon receipt by him of the direction* . . . . The notation of a judgment in the civil docket as provided by Rule 79 (a) *consti-*

tutes *the entry of the judgment;* and the judgment is not effective before such entry." (Emphasis supplied.)

So much of Rule 79 (a) as is pertinent here provides:

"All . . . judgments shall be noted . . . in the civil docket . . . . These notations shall be brief but *shall show . . . the substance of each . . . judgment of the court . . . ."* (Emphasis supplied.)

At the outset the Government contends that practical considerations—namely, certainty as to what judicial pronouncements are intended to be final judgments in order to avoid both premature and untimely appeals, to render certain the date of judgment liens, and to enable the procurement of writs of execution, transcripts and certified copies of judgments—require that a judgment be contained in a separate document so labeled, and urges us so to hold. Whatever may be the practical needs in these respects, the answer is that no present statute or rule so requires, as the Government concedes, and the decisional law seems settled that "[n]o form of words . . . is necessary to evince [the] rendition [of a judgment]." *United States* v. *Hark,* 320 U. S. 531, 534. See also *In re Forstner Chain Corporation,* 177 F. 2d 572, 576.

While an opinion may embody a *final decision,* the question whether it does so depends upon whether the judge has or has not clearly declared his intention in this respect in his opinion. Therefore, when, as here, the action is for money only—whether for a liquidated or an unliquidated amount, as Rule 58 makes no such distinction—it is necessary to determine whether the language of the opinion embodies the essential elements of a judgment for money and clearly evidences the judge's intention that it shall be his final act in the case. If it does so, it constitutes his final judgment and, under Rule 58, it "directs that a party recover [a sum of] money," and,

"upon receipt by [the clerk] of the [opinion]," requires him to "enter judgment forthwith" against the party found liable for the amount awarded, which is to be done by making a brief "notation of [the] judgment in the civil docket [showing the substance of the judgment of the court] as provided by Rule 79 (a)." When all of these elements clearly appear final judgment has been both pronounced and entered, and the time to appeal starts to run under the provisions of Rule 73 (a). And, as correctly held by the Court of Appeals, the later filing and entry of a more formal judgment could not constitute a second final judgment in the case nor extend the time to appeal. 236 F. 2d, at 892.

But, on the other hand, if the opinion leaves doubtful whether the judge intended it to be his final act in the case—and, in an action for money, failure to determine either expressly or by reference the amount to be awarded is strong evidence of such lack of intention—one cannot say that it "directs that a party recover [a sum of] money," as required by Rule 58 before the clerk "shall enter judgment forthwith"; nor can one say that the clerk's "notation in the civil docket"—if it sets forth no more substance than is contained or directed in the opinion, and being only a ministerial act (*In re Forstner Chain Corporation, supra,* 177 F. 2d, at 576) it may do no more— "show[s] . . . the substance of [a] judgment" of the court, as required by Rule 79 (a), and "constitutes the entry of the judgment" against a party for a sum of money under Rule 58.

While, as stated, there is no statute or rule that specifies the essential elements of a final judgment, and this Court has held that "[n]o form of words and no peculiar formal act is necessary to evince [the] rendition [of a judgment]" (*United States* v. *Hark, supra,* at 534), yet it is obvious that a final judgment for money must, at least, determine, or specify the means for determining, the amount (*United*

*States* v. *Cooke,* 215 F. 2d 528, 530) ; and an opinion, in such a case, which does not either expressly or by reference determine the amount of money awarded reveals doubt, at the very least, whether the opinion was a *"complete* act of adjudication"—to borrow a phrase from the Court of Appeals—or was intended by the judge to be his final act in the case.

But respondent argues, as the Court of Appeals held, that the opinion stated the amount of money illegally collected from respondent and, therefore, adequately determined the amount awarded, and that inasmuch as the clerk's entry incorporated the opinion by reference, it, too, adequately stated the amount of the judgment. This contention might well be accepted were it not for the fact that the action also sought recovery of interest on the amount paid by respondent from the date of payment to the date of judgment, and for the fact that the opinion does not state the date or dates of payment and, hence, did not state facts necessary to compute the amount of interest to be included in the judgment. Cf. *United States* v. *Cooke, supra,* at 530. In an effort to counter the effect of these omissions, respondent states that a search of the record, which it urges we should make, would show that the Government's answer admitted the date of payment, and thus would furnish the information necessary to compute the amount of interest to be included in the judgment. It relies upon a statement in the *Forstner* case, *supra,* saying "Whether such a judgment has been rendered depends primarily upon the intention of the court, *as gathered from the record as a whole* . . . ." 177 F. 2d, at 576. (Emphasis supplied.) This argument cannot be accepted under the facts here for the reason that Rule 79 (a) expressly requires that the clerk's entry "shall show . . . the substance of [the] judgment of the court . . . ." Surely the amount of a judgment for money is a vital part of its substance. To hold that one must

search the whole record to determine the amount, or the facts necessary to compute the amount, of a final judgment for money would be to ignore the quoted provision of Rule 79 (a).

In these circumstances, the rule declared by this Court in the *Hark* case—though a criminal case and, therefore, not governed by the Federal Rules of Civil Procedure, which as we have shown afford no aid in determining judicial intent—is exactly apposite and controlling.

> "Where, as here, a formal judgment is signed by the judge, this is *prima facie* the decision or judgment rather than a statement in an opinion or a docket entry. . . . The judge was conscious, as we are, that he was without power to extend the time for appeal. He entered a formal order of record. We are unwilling to assume that he deemed this an empty form or that he acted from a purpose indirectly to extend the appeal time, which he could not do overtly. In the absence of anything of record to lead to a contrary conclusion, we take the formal order of March 31 as in fact and in law the pronouncement of the court's judgment and as fixing the date from which the time for appeal ran." *United States* v. *Hark,* 320 U. S., at 534–535. See also *United States* v. *Higginson,* 238 F. 2d 439, 443.

The actions of all concerned—of the judge in not stating in his opinion the amount, or means for determining the amount, of the judgment; of the clerk in not stating the amount of the judgment in his notation on the civil docket; of counsel for the Government in not appealing from the "opinion"; of counsel for respondent in preparing and presenting to the judge a formal "judgment" on May 24; and, finally, of the judge himself in signing and filing the formal "judgment" on the latter date—clearly show that none of them understood the opinion

to be the judge's final act or to constitute his final judgment in the case.   Therefore, as in *Hark,* we must take the court's formal judgment of May 24 and the clerk's entry thereof on that date as in fact and in law the pronouncement and entry of the judgment and as fixing the date from which the time for appeal ran.

*Reversed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE HARLAN joins, dissenting.

This case presents the question whether an appeal by the Government to the Court of Appeals from a summary judgment rendered against it was taken within the sixty-day period established by Rule 73 (a) of the Federal Rules of Civil Procedure.   Ultimately decision turns on the need felt for nation-wide uniformity in the detailed application of rules of procedure within the federal judicial system, as against regard for local conditions and experience in the different circuits in construing rules phrased in broad and functional terms.   Though not so formulated by the Court, this is the underlying question for decision, for I cannot believe we brought here for review a discrete instance, a particular, nonrecurring set of circumstances, or that we wish to encourage petitions for certiorari to review, from time to time, other individual sets of circumstances.   The issues on the basis of which the Government sought review in this case were said to be of importance because they affected "all litigants in the federal courts."

Respondent taxpayer sued to recover $7,189.57 in stamp taxes, an amount specifically set forth in its complaint, alleged to have been illegally assessed and collected from it, and moved for summary judgment.   On April 14, 1955, the District Court filed a "Memorandum Decision" directed to the motion for summary judgment.

In its opinion the court, relying on Judge Leibell's decision in *United States* v. *National Sugar Refining Co.,* 113 F. Supp. 157, found that the tax, in the amount of $7,189.57, had been illegally collected, and concluded by stating that, "I am in agreement with Judge Leibell's analysis and, accordingly, the plaintiff's motion is granted." 130 F. Supp. 322, 324. On the same day the clerk made the following entry in the civil docket: "Rayfiel, *J.* ·Decision rendered on motion for summary judgment. Motion granted. See opinion on file."

Over a month later, on May 24, 1955, the court signed a paper, submitted to it by respondent, entitled "Judgment." This document recited that, respondent having moved for summary judgment, and the motion having been granted on April 14, 1955, and the court's opinion having been filed, "IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff, The F. & M. Schaefer Brewing Co., recover of the defendant, United States of America, the sum of $7,189.57 and interest thereon from February 19, 1954 in the amount of $542.80, together with costs as taxed by the Clerk of the Court in the sum of $37, aggregating the sum of $7,769.37, and that plaintiff have judgment against defendant therefor." On that day the clerk made the following entry in the docket: "Rayfiel, *J.* Judgment filed and docketed against defendant in the sum of $7189.57 with interest of $542.80 together with costs $37 amounting in all to $7769.37. Bill of Costs attached to judgment."

The Government filed its notice of appeal on July 21, 1955, ninety-eight days after the decision granting the motion for summary judgment, and fifty-eight days after the entry of the formal judgment of May 24. The Court of Appeals for the Second Circuit, six judges sitting *en banc,* unanimously dismissed the appeal on the ground that the notice of appeal had not been filed within sixty days from the entry of judgment as required by

Rule 73 (a) of the Federal Rules of Civil Procedure. The court found that judgment had been entered on April 14, 1955, when the motion for summary judgment was granted, and not on May 24, 1955, when the formal "Judgment" was docketed.

Rule 73 (a) provides:

> "When an appeal is permitted by law from a district court to a court of appeals the time within which an appeal may be taken shall be 30 days from the entry of the judgment appealed from unless a shorter time is provided by law, except that in any action in which the United States or an officer or agency thereof is a party the time as to all parties shall be 60 days from such entry . . . ."

Rule 54 (a) defines a "judgment" as:

> "a decree and any order from which an appeal lies."

Rule 58, entitled "Entry of Judgment," provides that:

> "Unless the court otherwise directs and subject to the provisions of Rule 54 (b), judgment upon the verdict of a jury shall be entered forthwith by the clerk; but the court shall direct the appropriate judgment to be entered upon a special verdict or upon a general verdict accompanied by answers to interrogatories returned by a jury pursuant to Rule 49. *When the court directs that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction;* but when the court directs entry of judgment for other relief, the judge shall promptly settle or approve the form of the judgment and direct that it be entered by the clerk. The notation of a judgment in the civil docket as provided by Rule 79 (a) constitutes the entry of the judgment; and the judgment is not

effective before such entry. The entry of the judgment shall not be delayed for the taxing of costs." (Emphasis supplied.)

Rule 79 (a) describes the civil docket mentioned in Rule 58, and goes on to declare that:

"All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be noted chronologically in the civil docket . . . . These notations shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court . . . ."

Thus, before the time for appeal begins to run under Rule 73 (a), a judgment as contemplated in Rule 58 must have been rendered by the court and, in compliance with Rule 79 (a), entered by the clerk in the civil docket. The judgment must have been both properly rendered and properly entered, and the entry of judgment is the decisive procedural moment. In the present case the question is whether the memorandum decision of April 14, 1955, was a "judgment" within the meaning of the Rules, and if it was, whether the clerk's docket notation of that date showed the "substance" of the judgment.

The Rules nowhere define with mechanical exactitude the meaning of the term "judgment." Rule 54 (a), however, in stating that a judgment includes "a decree and any order from which an appeal lies," emphasizes that a judgment is not confined to judicial actions so described, but includes any act of the court that performs the function of a judgment in bringing litigation to its final determination. Rule 58 is pertinent to what that function is and in describing when a judgment shall be entered indirectly illumines what a judgment is within the contemplation of the Rules. Thus, when a jury returns a general verdict and there have been no interrogatories,

judgment on the verdict shall be entered forthwith by the clerk, without further direction from the court. When the case is tried to the court and the relief awarded is complex, the court must approve the form of the judgment and direct that it be entered by the clerk. However, when the court directs that a party recover money only, and that is the situation in the present case, or that all relief be denied, the clerk is to enter judgment forthwith upon receipt of the direction.

One thing is clear from a close reading of these Rules in the light of the general purpose "to secure the just, speedy, and inexpensive determination of every action." Fed. Rules Civ. Proc., 1. Simplicity and speed, when consonant with effective protection of the interests of the parties, are touchstones for the interpretation of all the Rules, especially those strategically placed to advance the litigation to its final conclusion. Thus, as regards the judgment contemplated by Rule 73 (a), no formal document stamped "judgment" is required, and the direction that a party recover money or that all relief be denied may be included in an informal memorandum, given at the end of a written opinion, or even delivered orally from the bench. Of the many decisions in the Courts of Appeals on this question, none has suggested that a judgment must be expressed in a formal, autonomous document, as is required by the cumbersome, wasteful practice in some States. Such a requirement would contradict the liberal policy of the Federal Rules. We have recognized, even in a criminal case not governed by these Rules, that "No form of words and no peculiar formal act is necessary to evince [the rendition of a judgment] . . . or to mature the right of appeal." *United States* v. *Hark,* 320 U. S. 531, 534. The fact that by Rule 58 the court is expressly required to approve the form of the judgment when the relief granted is more complex than money or costs is surely convincing that

when only money or costs are awarded there is no such requirement.

The 1946 amendment to Rule 58 underscored the purpose not to require from the court a particular formal act or an explicit direction that judgment be entered. The Rule had provided that: "When the court directs the entry of a judgment that a party recover only money or costs or that there be no recovery, the clerk shall enter judgment forthwith upon receipt by him of the direction . . . ." 308 U. S. 737. It was amended to read: "When the court directs that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction . . . ." 329 U. S. 863. According to the Notes of the Advisory Committee, "The substitution of the more inclusive phrase 'all relief be denied' for the words 'there be no recovery', makes it clear that the clerk shall enter the judgment forthwith in the situations specified *without awaiting the filing of a formal judgment approved by the court.*" 28 U. S. C., p. 4343. (Emphasis supplied.) Moreover, the elimination of the words "the entry of a judgment" made it clear that it is the direction to recover that is the essential act, and not a direction explicitly to enter judgment or a direction framed in any particular manner.

Of course the court may, in the exercise of its control over the shape of the judgment and the time of its rendition, indicate that no judgment will be rendered until a formal document is drawn up, approved, and signed. The Rules themselves recognize that in many cases, according to the relief awarded, the careful formulation of a separate judgment may be indispensable to the proper disposition of the litigation. Moreover, a formal document evidencing the judgment may in some circumstances be necessary for execution, for registration

under state law, or for divers purposes unrelated to the taking of an appeal. In the present case, for example, the Government states that, under Treasury Department procedures, respondent could not have secured payment of the judgment without submitting a certified copy stating the precise amount of the judgment plus interest and costs. But these requirements, admitting their relevance to the particular purposes for which they are designed, do not justify eroding an important federal procedural policy in favor of speed and simplicity in taking appeals by demanding that because the definitive adjudication of a claim must be in a particular form for a particular purpose it must be so for all.

What is required under Rule 73 (a) is action by the court that clearly indicates that the issues presented by the litigation have been adjudicated, and that the decision is wholly completed and not dependent on further action by the court. Furthermore, since the parties must be in a position to make an intelligent choice whether or not to appeal, the court must inform them not only that it has decided the case, but what it has decided. In assessing the court's action to determine whether these requirements have been met and a judgment has been rendered within the meaning of Rule 73 (a), an appellate court naturally looks to the import of the trial court's action as it must reasonably have appeared to the parties. Certainty that the court has in fact rendered an appealable judgment is of course a vital consideration, so that meritorious appeals may not be lost through inadvertence. Surely such certainty can be attained by directing trial judges to explicitness in decision and expression without insisting on archaic formalities that pointlessly delay the course of the litigation. As Chief Judge Clark has indicated in an opinion following the decision in the present case, appellate rules should not be "adjusted to accommo-

date carelessness, at cost of . . . serious losses in effective court procedure . . . ." *Matteson* v. *United States,* 240 F. 2d 517, 519.

It is readily apparent that these criteria set only very broad limits on the interpretation of judicial action and that considerable scope is left for variation according to local custom and practice, properly so in a country as diversified and vast as ours. In this regard the judgment in *United States* v. *Hark,* 320 U. S. 531, *supra,* a criminal case involving an appeal direct to this Court under the Criminal Appeals Act, now 18 U. S. C. § 3731, is not significantly different from a judgment under the Federal Rules of Civil Procedure. There the District Court rendered an opinion granting the defendants' motion to quash the indictment, and some weeks later signed a formal order to the same effect. This Court concluded that the formal order rather than the earlier opinion was the judgment of the court within the meaning of the statute, and that the appeal from it was timely. This conclusion was reached, however, only after finding that the customary practice in the District Court for the District of Massachusetts, from which the appeal had come, was to issue a formal order quashing an indictment and to regard it as the judgment. The Court expressly refused, because of the diversity of practice in the lower courts, to lay down a "hard and fast rule" that when a formal judgment is filed it must necessarily be regarded as the judgment for purposes of appeal. In saying that a formal judgment is prima facie the judgment of the court, we made it clear that this presumption could be overcome by a showing of local practice to the contrary.

In *Commissioner of Internal Revenue* v. *Estate of Bedford,* 325 U. S. 283, a case involving the timeliness of a petition for certiorari for review in this Court of a judgment of a Court of Appeals, we found that by common

understanding and long-continued practice in the Court of Appeals, the formal order of mandate rather than the opinion was regarded as the judgment of the court. The Court respected this practice because, as we said, "Whether the announcement of an opinion and its entry in the docket amounts to a judgment for purposes of appeal or whether that must await some later formal act, ought not to be decided on nice-spun argumentation in disregard of the judicial habits of the court whose judgment is called into question, of the bar practising before it, of the clerk who embodies its procedural traditions, as well as in conflict with the assumption of the reviewing court." 325 U. S., at 287–288. Procedural requirements within the federal judicial system are not to be fitted to a Procrustean bed. To the extent that the Federal Rules clearly contemplate a certain manner of doing things, of course such explicitness must be respected. But when the Rules do not so require, and the subject is one intimately associated with local practice and custom and adequately dealt with on that basis, loyalty to the Rules precludes imposition of uniformity merely for its own sake.

In the Second Circuit a decision of a District Court, when it is a complete, clear, and final adjudication, is deemed the judgment of the court, even though a later, formal judgment is signed and filed at the instance of one of the parties. We have the word of a unanimous Court of Appeals for this. Moreover, we have the decisions of that court over a number of years consistently enforcing, without dissent, the practice to which it adheres in the present case. So active a litigant as the Government could hardly have been unaware that such was in fact the governing practice in the application of Rule 73 (a). The rule when first squarely stated in *United States* v. *Wissahickon Tool Works, Inc.*, 200 F. 2d 936,

938, reflected a position taken in a line of earlier authorities,[1] and it has since been repeated with increasing emphasis and clarity.[2] That court has continually admonished the District Courts to be clear and explicit in their adjudications so that certainty will not be sacrificed and litigants confused, but no less has it been concerned, because of the volume of litigation in the courts of that harried circuit and the widespread criticism of the law's delays, to formulate and enforce procedures that by their speed and simplicity will best expedite cases to a final determination.

If the decision of a District Court is, standing alone, a clear and final adjudication of the case, and at the time rendered sufficient to give notice of the running of the time for appeal, the Court of Appeals has refused to reassess its significance in the light of a later formal judgment. To give weight to the filing of the formal judgment in this situation, that court has found, would increase rather than diminish uncertainty and confusion, since the legal effect of the first decision would vary depending on the chance, often within the control of the parties as much as the court, that more formal action is taken later. The temptation would be too great to present a formal judgment for the court's approval simply to cast doubt on the finality of the earlier action, and thus improperly to extend the time for appeal. Although in other circuits a contrary position appears to have been taken and

---

[1] See *Leonard* v. *Prince Line, Ltd.*, 157 F. 2d 987, 989; *Murphy* v. *Lehigh Valley R. Co.*, 158 F. 2d 481, 484–485; *Binder* v. *Commercial Travelers Mut. Acc. Assn.*, 165 F. 2d 896, 901; *Markert* v. *Swift & Co.*, 173 F. 2d 517, 519, n. 2.

[2] *United States* v. *Roth*, 208 F. 2d 467; *Napier* v. *Delaware, L. & W. R. Co.*, 223 F. 2d 28; *Matteson* v. *United States*, 240 F. 2d 517; *Edwards* v. *Doctors Hospital, Inc.*, 242 F. 2d 888; *Repan* v. *American President Lines, Ltd.*, 243 F. 2d 876.

weight is given to the later filing of a formal judgment, *e. g., United States* v. *Higginson,* 238 F. 2d 439, 441–443 (C. A. 1st Cir.), it cannot be said that the view adopted by the Second Circuit is without reason or inappropriate to the needs and practicalities of litigation in that circuit.[3] In view of the varying problems in different circuits, we should, in this matter, leave to a Court of Appeals a considerable measure of freedom to interpret and form the practice in the District Courts in the light of its experience with the procedural relations between itself and those courts.

If the general rule of practice and interpretation in the Second Circuit is not in conflict with the Federal Rules of Civil Procedure, it is also not unreasonable as applied in the present case. The opinion of the District Court clearly informed the parties that respondent's motion for summary judgment was granted, and nothing in the language of the court remotely suggested that any formal judgment or further action by the court was contemplated or necessary for finality of adjudication. The amount of the judgment was the amount, plus interest and costs, of the tax illegally assessed and collected, and this amount was recited in the opinion as an agreed fact. Rule 58

---

[3] In its opinion in the present case the Court of Appeals invokes not only the Federal Rules of Civil Procedure and its own carefully formulated views on the rendition of judgment as understood in those Rules, but also Rule 10 (a) of the Southern and Eastern Districts of New York. This Rule provides that, "A memorandum of the determination of a motion, signed by the judge, shall constitute the order; but nothing herein contained shall prevent the court from making an order, either originally or on an application for resettlement, in more extended form." However, in *Matteson* v. *United States,* 240 F. 2d 517, following the decision in the present case, the Court of Appeals explained that it "viewed the local rule as merely corroborative of the practice actually required by F. R. 58 . . . ." 240 F. 2d, at 518.

specifically provides that the entry of judgment shall not be delayed for the taxing of costs, and since the date of the payment of the tax was not in dispute, the interest due was a simple, mathematically ascertainable item, and the failure to state it explicitly in the opinion neither qualified nor delayed the definitive aspect of the judgment.

The Court itself recognizes that a "judgment" for the purposes of appeal is no more than an action by the court that finally and completely adjudicates the issues presented by the litigation, and that ultimately the question is one of ascertaining the intention of the District Court in a given case. Nevertheless, the Court reverses the unanimous determination of the Court of Appeals on this question, and it appears to rest this unusual action on the slender reed that the opinion of the District Court failed to show on its face the amount of the interest. In judging whether the District Court intended to make a final disposition of the case, the Court of Appeals surely was correct in concluding that this trivial circumstance was more than outweighed by the other circumstances of the case.

There may be cases in which the trial court's decision is inconclusive and ambiguous as to whether further action is contemplated, or it may be impossible to determine the practical effect of the judgment without complicated computations or information not available at the time the court renders its decision. But the present case is not one of these. The different considerations such cases present do not justify us in striking down a reasonable procedural rule relevantly applied. Nor is it material that in this case it was respondent itself that submitted for the court's approval the formal judgment of May 24th. When the motion for summary judgment was granted on April 14th and a final judgment rendered according to the

established practice in the Second Circuit, the time for appeal commenced to run automatically by force of Rule 73 (a). The fact that the court or either of the parties later proceeded on the assumption that further action was necessary or desirable to obtain a judgment, or for whatever reason, could in no way enlarge the time within which to invoke the jurisdiction of the appellate court. Such action could not prevent either respondent or the Court of Appeals from insisting on the finality of the District Court's first decision.

What has been said in regard to the rendering of judgment applies equally to the entry of judgment on the civil docket. Rule 79 (a) requires that the notation on the docket be brief but show the "substance" of the judgment rendered. "Substance" in this context is not a term of Aristotelian metaphysics; it has no meaning apart from the realities of custom and practice and adequacy of notice to those whose conduct is governed by the docket entries and the information they reasonably convey. Such a practical reading of the Rule does not, contrary to the Government's contention, render nugatory the requirement that the substance of the judgment be shown, but properly interprets that requirement in terms of the purpose for which it was designed.

The docket entry in the present case recited that the motion for summary judgment had been granted, and referred to the court's opinion on file. The opinion in turn told of the amount of the judgment. Surely we cannot say, on a question so related to local custom and understanding, that the Court of Appeals erred in finding this sufficient notice to the parties that the case had been decided and how it had been decided. The docket entry standing alone would doubtless convey little to a stranger to the litigation. To those familiar with the case, however, and attentive to the question of appeal, it compre-

hensively conveyed the vital information necessary to protect their interests. The use of the word "judgment," or the recital of the amount of the judgment in the docket as well as in the opinion would have done no more, and a flat rule that such recitals must be included would convert Rule 79 (a) from a common-sense direction to maintain a docket useful to the court, the clerk, and interested parties, into a demand for pointless technicalities that ultimately might well seriously inconvenience them. If the amount of the judgment must necessarily appear in the docket, so also, it can be argued, must the terms of an injunction, the substance of that judgment; but by such inclusions the usefulness of the docket as an index and brief history of the proceedings would be substantially impaired if not defeated.

It must be remembered that the problem before us concerns not the niceties of abstract logic or legal symmetry, but the practicalities of litigation and judicial administration in the federal courts of New York, Connecticut, and Vermont, comprising the Second Circuit. Doubtless the Federal Rules of Civil Procedure, insofar as they govern the time for taking appeals, must be observed throughout the country by all eleven Courts of Appeals. But since the Rules do not lay down self-defining specifications or mechanically enforceable details on many matters, including the rendition and entry of judgments, does due regard for the Rules require more than obedience to the functional purposes they express? Does their observance necessarily imply a nation-wide uniformity in their formal application? We have for review the practical construction given to Rule 73 (a) by a Court of Appeals with as large a volume of business as any. By this practice the appellate jurisdiction of that court has been guided for some years, and it has been approved by every appellate judge in the circuit who has had occa-

sion to consider the question. The membership of the Court of Appeals reflects the experience of judges among those of longest experience in our judiciary, both on the District Courts and the Courts of Appeals, judges who have had extensive experience at the bar both in private and public litigation, and judges of special competence in the domain of procedure.[4] A rule of procedure authenticated by such a weighty certificate of legitimacy should not be nullified out of regard for considerations of *elegantia juris*. Certainly we should not upset it unless compelled to do so by the clear requirements of unambiguous legislation or the enforcement of unassailable even if implicit standards for the fair administration of justice.

I would affirm the judgment.

---

[4] The court sitting on the present case included:

Chief Judge Clark—6 years' private practice, 19 years on the Court of Appeals, 21 years member of the Advisory Committee on the Federal Rules of Civil Procedure.

Judge Frank—22 years' private practice, 6 years' federal administrative service, 16 years on the Court of Appeals.

Judge Medina—35 years' private practice, 4 years on the District Court, 7 years on the Court of Appeals.

Judge Hincks—14 years' private practice, 22 years on the District Court, 5 years on the Court of Appeals.

Judge Lumbard—21 years' private practice, 6 years in the United States Attorney's Office, 3 years on the Court of Appeals.

Judge Waterman—29 years' private practice, 3 years on the Court of Appeals.

Other judges who sat in *United States* v. *Wissahickon Tool Works, Inc.,* 200 F. 2d 936, *supra,* or the cases cited in note 2 were:

Judge Learned Hand—12 years' private practice, 15 years on the District Court, 27 years on the Court of Appeals at retirement.

Judge Augustus N. Hand—19 years' private practice, 13 years on the District Court, 26 years on the Court of Appeals at retirement.

Judge Swan—13 years' private practice, 26 years on the Court of Appeals at retirement.

Judge Chase—7 years' private practice, 10 years on state courts, 25 years on the Court of Appeals at retirement.

MR. JUSTICE HARLAN, dissenting.

The effort which has gone into this case has at least ended happily from the point of view of preserving the integrity of those provisions of the Federal Rules of Civil Procedure bearing on the timeliness of appeals. The Court's opinion, and the dissent of MR. JUSTICE FRANKFURTER which I have joined, are at one on the basic issue, namely, that entry of a formal judgment is not necessary to start the time for appeal running, and also agree that the determinative question in any given case is whether the District Court intended its decision on the merits to be a final disposition of the matter. After an *en banc* Court of Appeals had decided that the District Court in this instance did intend to make a final disposition of the case, I should have thought this Court would have considered it the better course to affirm the judgment below, with an appropriate suggestion to district judges to leave no room for argument about their intentions respecting finality, rather than to reverse the Court of Appeals on what was essentially an issue of fact.

Even so, the Court's action perhaps has a silver lining, for I daresay it will stimulate district judges to be more at pains in the future, cf. *Matteson* v. *United States,* 240 F. 2d 517, 518, to give in their opinions in these "money" cases an affirmative indication of intention regarding the finality or nonfinality of their decisions. If such is the effect of this decision, it will be a healthy thing, for surely such a commonplace affair as the time for appeal should not be permitted to breed litigation.