**ALLOYD GENERAL CORPORATION et al.**

v.

**BUILDING LEASING CORPORATION.**

Civ. A. 65–376–W.

United States District Court
D. Massachusetts.

Nov. 22, 1965.

Frederick G. Fisher, Jr., Hale & Dorr, Alan L. Lefkowitz, Ely, Bartlett, Brown & Proctor, Boston, Mass., for plaintiff.

Philip E. Tesorero, Tyler & Reynolds, Boston, Mass., Bernard D. Craig, Levy & Craig, Kansas City, Mo., for defendant.

WYZANSKI, Chief Judge.

The central issue here is whether a lessee's conveyance, in the form of a mortgage, to trustees to secure creditors, of the demised estate, and of a claim of unascertained value, being all the lessee's assets, constitutes that kind of "assignment * * * of the lessee's property for the benefit of creditors" which, under the wording of the lease, gives the landlord a right to enter and terminate the lease.

Plaintiffs began this action May 25, 1965 in the Superior Court of The Commonwealth of Massachusetts. They prayed for a declaratory judgment and for injunctive relief. They alleged that the corporate plaintiff, Alloyd General Corporation, is a Massachusetts corporation, and is the lessee of premises in Cambridge, Massachusetts under a lease dated October 22, 1959 given by defendant, Building Leasing Corporation, a Delaware corporation; and that the individual plaintiffs, Salter and White, both Massachusetts citizens, hold in trust, for the benefit of assenting creditors of Alloyd, a mortgage, dated April 28, 1965, covering all Alloyd's assets, including the lease to Alloyd. In their action plaintiffs sought a determination, under Mass. G.L. c. 231A § 6, that Alloyd is not in default under the terms of its lease from the lessor, the sole defendant herein. They also sought a temporary restraining order and preliminary and final injunctions, enjoining the lessor from sending notice of default to Alloyd or from taking action to terminate the lease.

The Superior Court of The Commonwealth, on plaintiff's application, *ex parte*, acting on the very day the suit began, May 25, 1965, temporarily restrained defendant from "sending any notice of default to * * * Alloyd" under the lease, "from seeking to enter on the Cambridge property" * * * and "from seeking to terminate said lease."

June 3, 1965 defendant, pursuant to the diversity jurisdiction and removal statutes, 28 U.S.C. §§ 1332, 1441, removed this case to this Court. Here on June 30, 1965 defendant answered the complaint. The answer sought a declaration that the mortgage by Alloyd to Salter and White as trustees constituted a default under its lease, and also prayed for preliminary and final injunctions enjoining plaintiffs from interfering with defendant's possession of the Cambridge property, and a declaration that any funds collected by plaintiffs from subtenants of said premises since April 28, 1965, the date of the mortgage, and not already paid to this defendant, be turned over to defendant.

September 29, 1965 defendant moved for summary judgment on the claim and counterclaim. October 15, 1965 plaintiffs also moved for summary judgment.

These cross motions are now presented for decision.

There is as to the facts no dispute except as to an alleged telephone conversation on May 10 between Samuel Rosen and Philip E. Tesorero, of which more is recited later in this opinion.

Defendant, by a lease dated October 22, 1959, amended August 22, 1963, demised a parcel of land and a two story building, at 35–37 Cambridge Parkway, corner of Commercial Avenue, Cambridge, Massachusetts, to Alloyd. It is a net lease, expiring December 13, 1975, under which Alloyd is obligated to pay in advance monthly rent at an annual rate of $39,260 until December 13, 1965, and thereafter at an annual rent of $34,000, and also all real estate taxes, insurance premiums, certain betterment assessments, all charges for utilities and other services, and maintenance costs except structural repairs and replacements. Alloyd may assign or sublet the premises, it, however, remaining liable on the lease covenants. Paragraph IX of the lease, so far as material, provides:

"PROVIDED ALSO, and this lease is upon this condition, that if the Lessee shall neglect or fail to perform or observe any of the Lessee's covenants herein, or if the leasehold hereby created shall be taken on execution, or by other process of law, or if any assignment shall be made of the Lessee's property for the benefit of creditors, or if a receiver, guardian, conservator, trustee in bankruptcy or, similar officer shall be appointed to take charge of all or any part of the Lessee's property by a court of competent jurisdiction and such receiver, guardian, conservator, trustee in bankruptcy or similar officer is not discharged within ninety (90) days of his appointment, or if the Lessee commits any act of bankruptcy resulting in adjudication of bankruptcy, or if a petition is filed by the Lessee under any bankruptcy law for relief or composition of its debts, or if the Lessee is declared a bankrupt then, and in any of said cases, the Lessor lawfully may immediately or at any time thereafter and without demand or notice enter upon the premises or any part thereof in the name of the whole and repossess the same as of the Lessor's former estate and expel the Lessee and those claiming through or under the Lessee and remove their effects, forcibly if necessary, without being deemed guilty of any manner of trespass and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and upon such entry, this lease shall terminate; * * * "

Alloyd leased the second floor to Deco Electronics, Inc. under a sublease, for a term now running to December 12, 1975, at an annual rental of $39,392; and the first floor to Massachusetts Institute of Technology under a sublease for a term now running to July 30, 1967, (but subject to an as yet unexercised option to extend for one five-year period), at an annual rental of $36,443. Obviously, these subleases, each of which is to a financially responsible tenant, represent considerable material advantage to Alloyd, the total rental obligations under the subleases far exceeding the rental obligations under defendant's lease to Alloyd.

January 5, 1965 an involuntary petition in bankruptcy was filed against Alloyd. February 15, 1965 the bankruptcy referee appointed a receiver. April 28, 1965 the bankruptcy court approved the sale of all Alloyd's remaining assets except first, Alloyd's rights under the lease from defendant, and, second, Alloyd's rights under a claim against Aero-Jet Corporation. That claim is for $275,000; but no evidence is submitted, and perhaps no reliable evidence could be offered, of the claim's present market value, if any. The proceeds of those Alloyd assets which were sold by the receiver with the approval of the referee have been applied to administrative expenses and in partial satisfaction of certain claims against Al-

loyd. Claims of approximately $700,000 against Alloyd remain unsatisfied.

Also on April 28, 1965, the day of the referee's approval, Alloyd delivered to Salter and White, as trustees, its $700,-000 promissory note, payable in 20 semi-annual instalments of $10,000 each from November 1, 1963 to May 1, 1975, and a final instalment of $500,000 on November 1, 1975. That note is secured by a mortgage to the trustees of all the remaining assets of Alloyd. Those assets are the demised estate and the unvalued claim against Aero-Jet. Both note and mortgage are in trust for the benefit of Alloyd's creditors so far as they assent. Creditors having claims of $560,523.17 have assented; creditors having claims of approximately $140,000 have not assented.

May 13, 1965 defendant received and accepted a check in the amount of $3,-282.67, dated May 10, 1965, drawn by "Alloyd General Corporation, Alleged Bankruptcy No. 65–8 by Frederick G. Fisher, Jr.", and countersigned by the referee in bankruptcy. This check was not stated to be for a particular purpose. But, whether it represented a payment for use and occupancy or a payment of rent, it covered the period May 15 through June 14, 1965. It corresponded in form with the monthly checks, dated January 14, February 17, March 10, and April 16, 1965, also made by the receiver and countersigned by the referee.

Plaintiff, supported by an affidavit of Samuel Rosen, claims, but defendant, supported by an affidavit of Philip E. Tesorero, denies, that on May 10, 1965 (before the aforesaid check of May 10 was received by defendant), Samuel Rosen, counsel for the receiver, by telephone, advised Philip E. Tesorero, counsel to defendants, that a trust mortgage had been executed by Alloyd on April 28, 1965 and that "he, Tesorero, still thought the trust mortgage constituted an assignment for the benefit of creditors." The conflict as to this alleged telephone conversation is the single dispute as to the facts, heretofore mentioned.

On the foregoing facts, all of which, except those stated in the last paragraph, are agreed upon, this Court rules that plaintiffs' motion is denied and defendant's motion is granted in full, subject, however, to a later ascertainment of the precise amount of defendant's recovery on its counterclaim.

Paragraph IX of the lease of October 22, 1959, amended August 22, 1963, has clear provisions authorizing the lessor to terminate if " * * * any assignment shall be made of the lessee's property for the benefit of creditors." This is familiar language. See Schwartz, Lease Drafting in Massachusetts (1961), p. 450; Hall, Massachusetts Law of Landlord and Tenant, (4th ed., 1949), p. 366. Its object is to give a landlord a right of entry whenever all of a lessee's property is removed from the lessee's control and applied for the benefit of his creditors. Among the reasons why a landlord inserts, and has a right to insist on, such a provision is his concern not merely as to current rental payments but also as to performance of covenants with respect to taxes, utilities, maintenance, indemnification, and other contingent obligations. He wants to have a lessee in active business with free assets to call upon.

Whatever effect might be given to the trust deed of April 28, 1965 in some different context, as, for example, in determining the priority of a lien of the United States, see United States v. Gargill, 1st Cir., 218 F.2d 556, the trust deed plainly falls within both the language and the purpose of Paragraph IX. Under that deed the tenant has given all of its assets to trustees for the benefit of creditors. Aside from the demised estate the only asset in which Alloyd or its trustees have any interest is Alloyd's claim against Aero-Jet Corporation. That has a purely speculative value—the final recovery as well as the cost of collection by litigation or otherwise being in doubt and essentially unprovable to the uncommitted mind. Moreover, while it is probable that Alloyd's subleases will continue to give it a larger return than Alloyd requires to meet its covenanted

obligations to defendant as landlord, this is only a probability. If, for example, obligations to pay taxes or maintenance rise, then Alloyd has not the scope or assets available to a company in active business with unassigned assets. Alloyd's non-assenting creditors may also create difficulties.

It is just those risks which defendant chose not to run when it bargained in Paragraph IX for a tenant that had not abandoned its independence and assigned all its assets to trustees for the benefit of creditors. Alloyd argues that, with good luck, something may ultimately be turned back to it, as a consequence of its equity of redemption under the trust mortgage. Such optimism is not rare, or technically impossible of achievement, among those who assign their assets to trustees for the primary benefit of creditors. Assignors frequently count on a residual benefit which is always technically available to them, if the market rises and creditors are paid in full. But the landlord need not share his tenant's hope.

In short, Alloyd is a lessee who has completely strapped himself for the benefit of his creditors. Having given up all freedom of movement and all assets, the lessee has left liberty of entry to a prudent landlord whose foresight specifically stipulated in the lease the power to terminate the demise. Cf. Wasserman v. Driscoll, 1st Cir., 282 F.2d 502. See United States v. Bruce Machine Company, D.Mass., 132 F.Supp. 525.

The conclusion just stated is applicable in the case of *any* assignment of all his assets by a lessee under the standard Massachusetts clause. But the conclusion is further buttressed by the special facts in this case. Here the mortgage to the trustees was given by the lessee after an involuntary petition against it had been filed, after its miscellaneous assets had been sold and their proceeds distributed, and after it had gone out of business except as a shell to be used in a lawyer's game. It is, in connection with the interpretation of this lease or in connection with the landlord's right of entry thereunder, of no importance that Alloyd was left "in possession" (whatever that means when an assignor has no assets but choses-in-action) or that the payment of assenting creditors, (if ever completed) is to be stretched over a 10 year period. The affidavits, taken most favorably to the plaintiff, give no assurance, and even no probability, that the trustees will ever get paid their note, in full. If the assenting creditors of Alloyd chose to run further risks, instead of cashing in at once, they should have given Alloyd assets to be freely used. They cannot, by taking a mortgage of Alloyd's lease and claim against Aero-Jet, constituting all Alloyd's assets, require the landlord to participate in a speculation toward which the creditors have given nothing fresh. In effect they are seeking to gamble on an unwilling landlord's money.

Alloyd seeks to avoid the conclusions already set forth by invoking a doctrine of waiver, premised on the May 10, 1965 check.

■ The facts do not support plaintiffs' argument. Read most generously, plaintiffs' affidavits, particularly Rosen's, do not show that he or anyone else disclosed to Tesorero, or anyone else, the text of the April 28, 1965 trust as executed. If Tesorero had, which he denies he had, a general awareness of an unread document not exhibited or offered to him, he is not bound by its contents and cannot be held to have made, for himself or another, an election based on the technical construction of the document.

Moreover, there is no evidence that Tesorero was authorized by defendant to accept on its behalf a notice of the terms of the April 28, 1965 trust or, more important, to represent it in the collection of rent.

Furthermore, the check of May 10, 1965 was made not by Alloyd but by its receiver. It was countersigned by the referee. Its form indicated that there was no change from the relationship underlying payments earlier during the receivership. Hence the landlord had a right to treat it, and did treat it, not as

927

a payment of rent under the lease, but as payment for temporary use and occupation. In re Wise Shoe Co., S.D.N.Y., 26 F.Supp. 762, 763.

Alloyd offers, as another ground for resisting defendant's motion that defendant never gave to Alloyd a 30 day notice of the latter's breach and of defendant's exercise of its right to terminate. It is doubtful if any notice was required in the case of an assignment for the benefit of creditors. Moreover, Alloyd, in the literal Latin sense, prevented the notice. *Ex parte,* it procured from the Superior Court an order which then and, by virtue of 28 U.S.C. § 1450, up to now has restrained defendant from giving notice.

Indeed, the restraint plaintiffs caused to be placed upon the landlord gives it the right, pursuant to its counterclaim, to an accounting by plaintiffs of all money collected either by Alloyd or by the trustees as rents from subtenants after the state court's temporary restraining order went into effect on May 25, 1965. Having shut defendant's mouth by a temporary restraining order, sought hastily and *ex parte,* plaintiffs are in no position to urge that defendant would not have acted promptly after learning of the lessee's breach of condition.

Plaintiffs must make what is in effect restitution. They cannot be allowed to retain the advantages of a possession of premises which they would have been required to surrender to defendant, if plaintiffs had left defendant free to act. Bedell Co. v. Harris, 228 App.Div. 529, 240 N.Y.Supp. 550. Note, 73 Harv.L. Rev. 333, 348–351. Restatement, Restitution § 74.

Defendant's brief indicates it is prepared to treat subrentals actually received from the subleases by Alloyd or the trustees as representing the fair rental value of the premises. Hence these subrentals less appropriate expenses and deductions (as agreed upon by December 6, 1965, or, if not agreed upon then, as determined by a master to be appointed by this Court) are recoverable by defend-

ant on its counterclaim. Rabb v. Patterson, 42 S.C. 528, 20 S.E. 540. Cf. Bedell Co. v. Harris, supra.

Plaintiff's motion for summary judgment denied. Defendant's motion for summary judgment granted, apart from the counterclaim. Defendant's motion for summary judgment on the counterclaim postponed awaiting a stipulation, no later than December 6, 1965, on the accounting figures, or, if no stipulation is filed, awaiting further hearing before a master or the Court, or both. Temporary restraining order of May 25, 1965 dissolved, but if any bond was given by plaintiffs it shall not be discharged as yet.