**ALLOYD GENERAL CORPORATION et al., Plaintiffs, Appellants,**

v.

**BUILDING LEASING CORPORATION, Defendant, Appellee.**

**No. 6672.**

United States Court of Appeals First Circuit.

Heard April 26, 1966.

Decided May 26, 1966.

Frederick G. Fisher, Jr., and Harold Hestnes, Boston, Mass., with whom Ernest Winsor, Standish Bradford, Jr., and Hale & Dorr, Boston, Mass., were on brief, for Leonard M. Salter and others, trustees, appellants.

Alan L. Lefkowitz, Boston, Mass., with whom Ely, Bartlett, Brown & Proctor, Boston, Mass., was on brief, for Alloyd General Corporation, appellant.

Robert F. McCormick, Boston, Mass., with whom Bernard D. Craig, Kansas City, Mo., Tyler & Reynolds, Boston, Mass., and Levy & Craig, Kansas City, Mo., were on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

In October 1959 the defendant, Building Leasing Corporation (Building Leasing) demised and leased to the plaintiff, Alloyd General Corporation (Alloyd)[1] a certain two story business building in Cambridge, Massachusetts.[2] The lease contained a condition that "if any assignment shall be made of the Lessee's property for the benefit of creditors" the Lessor may take possession of the premises and terminate the lease. A few years later Alloyd subleased the entire premises,[3] which subleases are still in effect.

On January 5, 1965, an involuntary petition in bankruptcy was filed against Alloyd. A receiver was appointed and shortly thereafter some of its assets were sold with the approval of the bankruptcy court. On April 28th the court approved the sale of all the rest of Alloyd's assets, except this lease and a substantial claim it had against one of its customers. On the same date (April 28) Alloyd, with the approval of the Referee in Bankruptcy, delivered to the plaintiffs Salter and White, as trustees, its promissory note for $700,000[4] secured by a mortgage to said trustees of all Alloyd's remaining assets.[5] The note and mortgage are held in trust for the benefit of the creditors

of Alloyd who assent to this arrangement[6] and on May 11, 1965, the bankruptcy proceeding was dismissed.

The defendant regarded this trust mortgage as a breach of the above stated condition of the lease and made known its intention to give notice of termination. Before this was done, plaintiffs brought this suit in the Massachusetts Superior Court for a determination of their rights under the lease and obtained an ex parte temporary restraining order against the defendant from sending said default notice or taking any other action to terminate the lease. Defendant removed the case to the district court on the grounds of diversity[7] and filed an answer and counterclaim. The case was heard on cross motions for summary judgment on the complaint and on the counterclaim.[8] The district court decided that the trust mortgage constituted an assignment of the lessee's property for the benefit of creditors as a matter of law; that as such it was a breach of the condition of the lease, thus entitling the defendant to enter the premises and terminate the lease. Thereupon the court denied plaintiff's motion for summary judgment, dissolved the temporary restraining order and granted de-

1. There are three plaintiffs, Alloyd, Robert White and Leonard M. Salter, the latter two being trustees under a certain trust mortgage which is in issue in this case.

2. The term of the lease, as amended in 1963, ran to December 13, 1975. It was a "net lease" under which Alloyd agreed to pay real estate taxes, certain other assessments, insurance premiums and utility charges in addition to a yearly rental of $39,260 for the period ending December 13, 1965, and $34,000 a year for the remainder of the term.

3. It subleased the top floor for the entire term of its lease at $39,392 a year in 1963 and in 1964 subleased the first floor for $36,443 a year for the term ending June 30, 1967, with an option to renew for an additional five year period.

4. Payable in twenty semi-annual installments of $10,000 each from November 1, 1965 to May 1, 1975, with a final installment of $500,000 payable on November 1, 1975.

5. The lease and the claim above mentioned were Alloyd's only remaining assets.

6. On April 29 the receiver sent a letter to all creditors of record apprising them of the assets and liabilities of the company and suggesting that the only hope for the unsecured creditors depended upon maintaining the lease and that this could only be accomplished if the bankruptcy proceeding is dismissed. Of the $700,000 in outstanding claims, creditors representing $560,523.17 assented to this trust mortgage arrangement.

7. Upon removal, the temporary restraining order issued by the Massachusetts Superior Court continued in force by virtue of 28 U.S.C. § 1450.

8. Amongst other things, the counterclaim is for rent collected by plaintiffs from the subtenants since April 28, 1965, (the date of the trust mortgage) and not already paid to the defendant.

fendant's motion for summary judgment apart from the counterclaim upon which it postponed action.[9] Plaintiffs filed this appeal under 28 U.S.C. § 1292(a) (1)[10] from paragraph 4 of the court's order which dissolved the restraining order.[11] Shortly after the appeal was taken the parties filed a stipulation showing the collection of certain rents and the payment of certain expenses by Alloyd,[12] and later the plaintiffs filed a motion in the district court for disposition of defendant's counterclaim.[13] No action has been taken on this motion.[14]

▇ Defendant challenges the jurisdiction of this court to hear plaintiffs' appeal. It contends that the district court's order declaring the trust mortgage to be a breach of the condition of the lease effectively disposed of the entire controversy and therefore constituted a final judgment;[15] that no general appeal having been taken therefrom, the limited question raised by this appeal (the dissolution of the temporary restraining order) was thereby rendered moot and consequently the appeal should be dismissed.

In our opinion the court's order here does not qualify as a final judgment. It leaves the suit pending for further proceedings—the disposition of defendant's motion for summary judgment on its counterclaim, action on which was expressly "postponed" by the court. The order "adjudicates fewer than all the claims" in the case and thus under Rule 54(b) of the Federal Rules of Civil Procedure does not terminate the case. Nor do we think it qualifies as a final judgment in form or substance under Rules 58, 79(a) or Form 32. See Danzig v. Virgin Isle Hotel, Inc., 278 F.2d 580 (3d Cir.1960). Contrary to defendant's contention, the order does not clearly evidence the district court's intention that it shall be its final act in the case which is one of the tests laid down in United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 233, 78 S.Ct. 674, 2 L.Ed. 2d 721 (1958). In fact the indications in the order itself are quite the other way.[16]

9. For the opinion of the district court see 247 F.Supp. 922 (1965). With reference to the disposition of the counterclaim see p. 927 of the opinion where the court stated: " * * * Defendant's motion for summary judgment granted, apart from the counterclaim. Defendant's motion for summary judgment on the counterclaim postponed awaiting a stipulation, no later than December 6, 1965, on the accounting figures, or, if no stipulation is filed, awaiting further hearing before a master or the Court, or both. * * * "

10. "§ 1292. Interlocutory decisions
(a) The courts of appeals shall have jurisdiction of appeals from:
(1) Interlocutory orders cf the district courts of the United States, * * * granting, continuing, modifying, refusing or dissolving injunctions, * * *." There is no question that a temporary restraining order is included within the meaning of "injunction" as used in this section. Taylor v. Breese, 163 F. 678, 688 (4th Cir. 1908).

11. Paragraph 4 of the order reads as follows: "The temporary restraining order originally issued by the Superior Court of The Commonwealth of Massachusetts on May 25, 1965, and continued by virtue of 28 U.S.C. § 1450, is dissolved, but such disposition shall not operate to affect any bond given by plaintiffs in connection with the issuance of the temporary restraining order."

12. At this time the case was in this court, the original pleadings having been delivered to the clerk of this court on December 1, 1965.

13. The motion requests that this be done either by entry of final judgment under Rule 58 or by scheduling the same for trial on the merits.

14. The docket contains the following entry on January 4, 1966: "Wyzanski, Chief Judge. Re entry of final decree; Court will not act until after Ct. of A."

15. Its contention is that this order became final (a) when entered, or (b) when the parties executed the stipulation on December 22, 1965, or (c) when the stipulation was filed on December 29, 1965.

16. Paragraph 5 of the order reads in part as follows: "This order and declaration shall be stayed for 30 days to permit plaintiffs to take an appeal under 28 U.S.C. § 1292(a) (1) * * *."

We, therefore, conclude that this is properly an appeal from an interlocutory order of the district court which this court has jurisdiction to hear and determine under 28 U.S.C. § 1292.

 The district court dissolved the temporary restraining order here only after deciding that the trust mortgage was in effect an assignment for the benefit of creditors. In determining whether the district court erred in dissolving the restraining order we must necessarily examine its decision with reference to the trust mortgage. These two questions are inter-related and one is predicated upon the other. Our jurisdiction embraces a consideration of such questions as are basic to and underlie the order supporting the appeal. Deckert v. Independence Shares Corp., 311 U.S. 282, 287, 61 S.Ct. 229, 85 L.Ed. 189 (1940). While we will not go any further into the merits of the case than is necessary to decide the matter on appeal, 6 Moore's Federal Practice, 2d Edition § 54.08, the question of the dissolution of the temporary restraining order opens up for our consideration the substantive question as to the true nature of this trust mortgage.[17] A trust mortgage looks towards the rehabilitation of the mortgagor and differs from an assignment for the benefit of creditors in that the debtor is allowed to retain and operate its assets as an integral part of a going business. United States v. Gargill, 218 F.2d 556, 561 (1st Cir. 1955). That is not the situation here. Alloyd's chances of rehabilitation, even under the most favorable circumstances, are practically nil. It is not now a going concern in the generally accepted sense having divested itself of all its operating assets, including its name and good will. It is nothing more than a corporate shell run solely by and for the benefit of its creditors and no one else. Clearly the payments provided in the mortgage note are in amounts which under the circumstances the mortgagor cannot reasonably expect to meet. United States v. Gargill, supra.

 The condition in the lease against assignments for the benefit of creditors is a customary and generally accepted provision in Massachusetts leases. In construing it we must read the language used by the parties in the light of their intention and purpose. Obviously, the lessor inserted this provision to insure continuity of revenue from its property and there is nothing improper if the breach of this condition results in a termination of the lease which in fact works to its advantage. Plaintiffs suggest that the lessor does not stand to be injured by this so-called trust mortgage arrangement. That may be true for the present but it may not and probably will not be true in the future. Under the circumstances here no ultimate benefit to the lessor is apparent. To be sure, the income from the subtenancies may be more than enough to permit the lessee to meet its current obligations to the lessor. However, the time may come when that will no longer be so. In fact, this is most likely to occur as the lease matures. Thus, the plaintiffs are in the enviable position, if they prevail in this case, of being able to hold on to the lease as long as there is an overage from the subtenancies and depart when this overage ceases to exist. Certainly this was not the intention of the parties when the lease was executed in October 1959. Under the circumstances of this case, in order to be a trust mortgage in the true sense, there must be a real lessee—not a fleeting one, but one who is ready and able to stand liable for the present and future rent—even if it had no profitable subtenants. Here the lessor had no such cushion. The economic risk which the lessor is being called upon to take is the very one against which it sought to protect itself

17. Although there are cases which appear to hold that an appeal from an order granting or denying an interlocutory injunction will not support review of an order denying summary judgment (see Drittel v. Friedman, 154 F.2d 653 (2d Cir. 1946); John Hancock Mutual Life Ins. Co. v. Kraft, 200 F.2d 952 (2d Cir. 1953), in our opinion these cases are inapposite here.

by inserting this condition in the lease. It should not be required to assume this risk. Such was not its bargain.

Under the circumstances of this case, the transaction in question was not a trust mortgage in the true sense. We hold as a matter of law that it was an assignment for the benefit of creditors within the meaning of the lease.

No other questions raised need be considered.

Affirmed.