STATE OF NEVADA, Ex REL. ROBERT LIST, ATTORNEY GENERAL FOR THE STATE OF NEVADA, ON RELATION OF ITS STATE TAXICAB AUTHORITY OF CLARK COUNTY, AND ITS ADMINISTRATOR AND BOARD MEMBERS, ACTING IN THEIR OFFICIAL CAPACITY, NAMED HEREIN AS MANUEL CORTEZ, JAMES JONES, B. J. HANDLON AND JOSEPH LA VOIE, AND ITS INVESTIGATOR–EMPLOYEES, ACTING IN THEIR OFFICIAL CAPACITY, NAMED HEREIN AS WAYNE McDOR–MAN, MAC SECHRIST, THOMAS FOGERTY AND WALTER HINSON; CHECKER, INC., DBA CHECKER CAB CO.; VEGAS–WESTERN CAB, INC., DBA VEGAS–WESTERN CAB CO.; YELLOW CAB COMPANY OF NEVADA, DBA YELLOW CAB CO.; ACE CAB INCORPORATED, DBA ACE CAB CO.; UNION CAB CO.; WHITTLESEA BLUE CAB COMPANY, DBA WHITTLESEA CAB CO.; AND HENDERSON YELLOW CAB CO., APPELLANTS, v. WILLIAM MIRIN, INDIVIDUALLY, AND WILLIAM MIRIN, DBA STRIP CAB CO., RESPONDENTS.

No. 7864

August 31, 1976                    553 P.2d 966

504

*Robert List,* Attorney General, and *Stephen P. Boland,* Deputy, Carson City; and *Neil Slocum,* Deputy, Las Vegas, for Appellants State and State Taxicab Authority of Clark County.

*Galane, Tingey & Shearing,* Las Vegas, for Appellants Checker Cab and Vegas-Western Cab.

*Wiener, Goldwater, Galatz & Waldman, Ltd.,* and *Allan R. Earl,* Las Vegas, for Appellant Yellow Cab.

*Morris & Wood,* Las Vegas, for Appellants Ace Cab and Union Cab.

*Howard Ecker,* Las Vegas, for Appellant Whittlesea Cab.

*Leonard A. Wilson,* Las Vegas, for Appellant Henderson Yellow Cab.

*Kermitt L. Waters,* Las Vegas, for Respondents.

# OPINION

*Per Curiam:*

This is an appeal from an order of the district court granting a partial summary judgment in favor of Respondents William Mirin individually and William Mirin doing business as Strip Cab Co. (hereinafter referred to as Mirin), wherein the district court reversed an order of the Taxicab Authority of Clark County (hereinafter referred at as Authority) that had denied Mirin's application for a certificate of public convenience and necessity. The court further ordered Authority to immediately grant Mirin a certificate with necessary licenses and medallions to operate 64 taxicabs in Clark County.

The instant action was commenced by the State of Nevada to enjoin Mirin from continuing the unauthorized operation of a taxicab company. Mirin had previously applied to Authority for a certificate, which Authority, after a public hearing, denied. In response to the State's complaint, Mirin filed a counterclaim in 12 counts, seeking, among other relief, in Count I, an order setting aside Authority's order denying his certificate, on the grounds that said order was "unreasonable, arbitrary, capricious, and not supported by the evidence, . . ."[1] Mirin filed a supplemental counterclaim, then moved for partial summary judgment on Count I, which State moved to dismiss, including all remaining counts.[2] The district court found in favor of Mirin and against the State, setting aside Authority's order denying Mirin a certificate of public convenience and necessity and directing Authority to forthwith issue a certificate to Mirin, with the necessary licenses and medallions, to operate 64 taxicabs in Clark County, from which order State has appealed.

Since there was no final adjudication of the 11 remaining counts of Mirin's counterclaim and appellants were desirous of

---

[1]Mirin in the other counts sought damages for false arrest, malicious prosecution, and fraud.

[2]At this juncture, the additional parties had been joined on motion to intervene, namely, Checker Cab Co., Vegas-Western Cab Co., Yellow Cab Co., Ace Cab Co., Union Cab Co., Whittlesea Cab Co., and Henderson Yellow Cab Co.

perfecting an early appeal from the partial summary judgment, they moved the court for an express determination that there was no just reason for delay, as required by NRCP 54(b), which the court denied.[3] A threshold issue, therefore, is Mirin's contention that this court is without jurisdiction at this juncture to entertain the appeal. NRAP 3A(b)(2) permits an appeal to be taken from an order granting or denying an injunction.[4] The order presently under review comes squarely within the purview of this section, since it effectively denies the State's request for an injunction to restrain Mirin from operating a taxicab business in Clark County. In De Luca Importing Co. v. Buckingham Corp., 90 Nev. 158, 520 P.2d 1365 (1974), this court rejected the contention that an appeal from an order denying an injunction requires a 54(b) certification if it disposes of less than all of the claims of the parties. In reaching that conclusion, this court said, 90 Nev. at 159–160, 520 P.2d at 1366:

". . . An appeal may be taken from an order denying a motion for an injunction without any express determination that there is no just reason for delay as required by NRCP 54(b). NRAP 3A(b)(2). See Atlantic Richfield Co. v. Oil, Chemical & A. Wkrs. Int. U., 447 F.2d 945 (7th Cir. 1971); Build of Buffalo, Inc. v. Sedita, 441 F.2d 284 (2nd Cir. 1971); Western Geophysical Co. of Amer. v. Bolt Associates, Inc.,

---

[3]NRCP 54(b):

"(b) *Judgment Upon Multiple Claims or Involving Multiple Parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

[4]NRAP 3A(b)(2):

"(b) *Appealable Determinations.* An appeal may be taken:

". . .

"(2) From an order granting or refusing a new trial, or granting or refusing to grant or dissolving or refusing to dissolve an injunction, or appointing or refusing to appoint a receiver, or vacating or refusing to vacate an order appointing a receiver, or dissolving or refusing to dissolve an attachment, or changing or refusing to change the place of trial, and from any special order made after final judgment."

440 F.2d 765 (2nd Cir. 1971); Rains v. Cascade Industries, Inc., 402 F.2d 241 (3rd Cir. 1968); Alloyd General Corp. v. Building Leasing Corp., 361 F.2d 359 (1st Cir. 1966); George P. Converse & Co. v. Polaroid Corporation, 242 F.2d 116 (1st Cir. 1957); Pang-Tsu Mow v. Republic of China, 201 F.2d 195 (D.C. Cir. 1952); [sic] 91 U.S. App. D.C. 324, cert. denied 345 U.S. 925."

We turn to consider the merits of the case. The Legislature has provided that in counties where population is 200,000 or more the power to regulate the taxicab industry is conferred upon a Taxicab Authority and that the regulatory authority given the Public Service Commission of Nevada does not apply.[5] Such Taxicab Authority is given express power to conduct hearings and make final decisions on applications for certificates of public convenience and necessity to operate a taxicab service. NRS 706.8819(2).[6]

The Legislature has also empowered Authority to allocate the number of taxicabs among the certificate holders. NRS 706.8824(1).[7] The Legislature has also set forth in NRS 706.8824(2) the factors which Authority shall consider in determining the allocation of taxicabs,[8] which shall be heard

---

[5]NRS 706.881:

"1. NRS 706.8811 to 706.885, inclusive, apply to a county whose population is 200,000 or more, as determined by the last preceding national census of the Bureau of the Census of the United States Department of Commerce.

"2. Within any such county, those provisions of this chapter which confer regulatory authority over taxicab motor carriers upon the public service commission of Nevada do not apply."

[6]NRS 706.8819(2):

"The taxicab authority shall conduct hearings and make final decisions in the following matters:

" . . .

"2. Applications for certificates of public convenience and necessity to operate a taxicab service; . . ."

[7]NRS 706.8824(1):

"1. Whenever circumstances require a change in the allocations existing on July 1, 1969, or afterward established, the taxicab authority shall allocate the number of taxicabs among the certificate holders in any county to which NRS 706.881 to 706.885, inclusive, apply."

[8]NRS 706.8824(2):

"2. In determining the allocation of taxicabs as set forth in subsection 1, the taxicab authority shall consider:

"(a) The needs and requirements of residents of the area served by the certificate holders;

"(b) The needs and requirements of the tourists of the area served by the certificate holders;

"(c) The interests, welfare, convenience, necessity and well-being of the public at large in the area served by the certificate holders; and

and considered before the Taxicab Administrator. NRS 706.-8823(1).[9] In NRS 706.391(2) [cross-referenced in NRS 706.-8827(2)], the Legislature set forth the factors which Authority must take into consideration when determining whether the applicant is fit, willing, and able to perform the services of a common carrier. Pursuant to its powers to establish rules and regulations, Authority adopted Rule 103 of General Order Number 3 of the State of Nevada Taxicab Authority, which provides:

"The burden of proof shall be with the applicant to satisfy the authority of his financial ability to perpetuate a continuous service, as applied for, consistent with the public interest; and the authority may also consider applicant's background prior to any grant. The authority also reserves the exclusive right to make any investigation prior to issuance of a certificate of public convenience and necessity or a permit."

After a public hearing, Authority denied Mirin's application for a certificate of public convenience and necessity. In doing so, Authority predicated its ruling in part on findings that Mirin (1) had failed to show an adequate financial statement and (2) had failed to establish financial responsibility.

A review of the record shows that the findings of Authority relating to the inadequacy of Mirin's financial statement and fiscal responsibility are supported by substantial evidence. Mirin filed two financial statements. In the first statement, he omitted a $250,000 liability. The amended statement showed two six-million-dollar choses in action consisting solely of pending law suits. Both statements reflected as assets a "pledged loan" from Pioneer Citizens Bank. The sole evidence supporting the pledge was a letter from the bank that it was "willing to entertain an application for a loan," assuming certain conditions were met. The record discloses that Mirin's financial statements showed that he had solid assets of $400 and liabilities in excess of $262,850.

Additional evidence reflecting on Mirin's fiscal responsibility indicates that in 1967 he failed to pay the Internal Revenue Service withholding funds he retained from his employees and

"(d) Any other factors which the administrator considers necessary and proper for determining the allocation."

[9]NRS 706.8823(1):

"The [taxicab] administrator shall conduct hearings and submit recommendations for a final decision to the taxicab authority, which shall render a final decision in the following matters:

"1. Allocation of taxicabs;"

that he used the funds to pay his own debts. Not only did Mirin admit that he failed to pay the IRS, but he failed to recognize the obligation as a trustee of the funds, testifying:

"Well, I wasn't delinquent. I had the money, and I sent the necessary paper work in."[10]

In view of the evidence, Authority's findings cannot be said to be clearly erroneous, nor may Authority's ruling be characterized as arbitrary or capricious. NRS 233B.140(5)(e).[11] The court was therefore in error in reversing the decision of Authority in denying Mirin's application for a certificate of public convenience and necessity. And it follows, of course, that the court's further order directing Authority to issue a certificate to Mirin with necessary licenses and medallions was without the court's jurisdiction, for the Legislature has delegated such power to Authority. NRS 706.8819(2), *supra*. Therefore, the order granting partial summary judgment is hereby reversed.

---

[10]Mirin further demonstrated his lack of fiscal responsibility when he testified as follows at the May 8–9, 1974 hearing before Authority.

"MR. CORTEZ [Authority Administrator]: . . .

"Do you still owe the Internal Revenue Service money according to direct testimony here?

"THE WITNESS: Well, the once falsifying the return, if I recall.

"MR. CORTEZ: I didn't ask you why. Do you still owe them some money?

"THE WITNESS: I don't feel that I do.

"MR. CORTEZ: Do they feel you do?

"THE WITNESS: They haven't bothered me in five years.

". . .

"Q [by Mr. Schreck, counsel for Whittlesea Cab Co.] Now, Mr. Mirin, you state that this $250,000 that is owed presently to your attorney does not appear on your financial statement. That is a mere oversight; is that correct?

"A Yes. You are being repetitious. I answered that.

"Q It's a mere oversight? The $250,000 is a mere oversight?

"A There is no pressing need to pay that thing tomorrow or the next month or the next year."

[11]NRS 233B.140(5)(e), (f):

"5. The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

". . .

"(e) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

"(f) Arbitrary or capricious or characterized by abuse of. discretion or clearly unwarranted exercise of discretion."