**G. & T. TERMINAL PACKAGING CO., INC., Petitioner–Appellant,**

v.

**Philip A. HAWMAN and Hawman Farms, Inc., Respondents–Appellees.**

No. 591, Docket 88–7737.

United States Court of Appeals, Second Circuit.

Argued Dec. 22, 1988.

Decided March 14, 1989.

Linda Strumpf, New York City, for petitioner-appellant.

Mary D. Faucher, New York City (Leader & Berkon, New York City, of counsel), for respondents-appellees.

Before NEWMAN and ALTIMARI, Circuit Judges, and GRIESA, District Judge.[*]

ALTIMARI, Circuit Judge:

Plaintiff-appellant G. & T. Terminal Packaging Co., Inc. ("G. & T.") appeals from a judgment of the United States District Court for the Southern District of New York (Mary Johnson Lowe, *Judge*), granting defendants-appellees' motion to dismiss as untimely G. & T.'s appeal under the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499g(c) (1982) ("PACA"), and for costs and attorneys' fees. G. & T. sought review in the district court of a decision and amended order of the Secretary of Agriculture, awarding reparation to appellees in the amount of $33,-220.30. At issue in this appeal is whether the amended order or its predecessor was the final order for purposes of review in

the district court. Because we find the Secretary's amended order was the final order, we reverse.

## BACKGROUND

On March 5, 1985, Phillip A. Hawman and Hawman Farms, Inc. ("the Hawmans") initiated proceedings before the United States Secretary of Agriculture pursuant to PACA section 499f(a), in which they sought $67,740.78 from G. & T. in connection with the sale on August 3 and August 4, 1984 of five carlots of potatoes. G. & T. answered that it had paid the Hawmans the undisputed amount due of $34,520.30, and denied further liability. A hearing was held on August 19, 1985, on the basis of which the Secretary determined that a portion of the payment was still outstanding. Two years later, by order dated September 11, 1987, the Secretary directed that G. & T. pay the Hawmans $33,220.30 "with interest thereon at the rate of 13% per annum from 1984 until paid."

On September 22, 1987 the Secretary, acting *sua sponte*, issued an "Amended Order." The amended order stated that, through the Secretary's inadvertence, the month from which interest was to be paid had been omitted from the September 11 order. Accordingly, the September 11 order was amended to read as follows:

### Order

Within 30 days from the date of this order, [G. & T.] shall pay to [the Hawmans], as reparation, $33,220.30 with interest thereon at the rate of 13% per annum from September 1, 1984 until paid....

G. & T. received the amended order on September 28, 1987, along with an attached letter from J.D. Flanagan, Chief of the Department of Agriculture PACA Branch Fruit and Vegetable Division ("PACA Branch"). The letter stated, in pertinent part, that "[t]he reparation awarded in the order of September 11, 1987, as thus

---

[*] Honorable Thomas P. Griesa, United States District Court for the Southern District of New York, sitting by designation.

amended, shall be paid within 30 days from the date of *this order* or on or before *October 22, 1987."* (Emphasis added). The letter went on to state that "[u]nless we are advised of payment of the reparation award or that an appeal has been filed in United States District Court, the order becomes final on October 22, 1987." The Hawmans received the amended order, but not the cover letter. Subsequently, G. & T. received a mailgram from the PACA branch dated October 16, 1987 indicating that unless the order was "appealed to court by October 22, or paid by October 28," G. & T.'s license would be suspended.

Under section 499g(c) of PACA, a party who is "adversely affected" by the entry of a reparation order is entitled to appeal the decision in the district court. The appeal is perfected by filing a petition and bond in an amount double that awarded by the Secretary within 30 days of the date of the order. G. & T. filed its notice of appeal and supersedeas bond on October 22, 1987. The appeal was filed within 30 days of the amended order, but 41 days from the date of the original order. The Hawmans moved in the district court to dismiss the appeal for lack of subject matter jurisdiction. They argued that the Secretary's September 11 decision was the final order from which the appeal should have been taken, and the appeal was therefore untimely.

Notwithstanding the apparent position of the Secretary that the amended order was properly appealable, the district court deemed the final order to be the one dated September 11. Relying on *Carter/Mondale Presidential Comm., Inc. v. Federal Election Comm'n.,* 711 F.2d 279 (D.C.Cir. 1983), the court found September 11 to be the "critical date" on which the "obligation of payment was imposed and the practical relationship between the parties affected." Accordingly, the court found the appeal to be untimely and granted the Hawmans' motion to dismiss. The court also awarded the Hawmans their costs and attorneys' fees.

On appeal from the judgment of dismissal, G. & T. contends that the court erred as a matter of law in finding the September 11 decision to be the agency's final order. It argues that under the "pragmatic approach to finality" articulated by various courts, the September 22 decision was properly appealable.

## DISCUSSION

It is undisputed by the parties that the statutory time limit imposed by section 499g(c) of PACA is jurisdictional. *Cf. Texas Mun. Power Agency v. Administrator, EPA,* 799 F.2d 173, 174 (5th Cir.1986). Moreover, for the Secretary's decision to be appealable, the order must be the agency's final action. *See Bell v. New Jersey,* 461 U.S. 773, 778, 103 S.Ct. 2187, 2191, 76 L.Ed. 2d 312 (1983) (strong presumption that judicial review is available only when agency action becomes final); 5 U.S.C. § 704 (1982) (providing generally for review of final agency actions). The Hawmans argue that the "crucial question" is whether the September 11 decision was the final decision from which an appeal could be taken. They refer us to cases which set forth indicia of finality in agency decisions, and contend that the September 11 decision had the requisite indicia of finality.

This court follows the pragmatic approach to questions of the finality of agency decisionmaking articulated in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149–152, 87 S.Ct. 1507, 1515–1517, 18 L.Ed. 2d 681 (1967). *See Seafarers Int'l Union of North America v. United States Coast Guard,* 736 F.2d 19, 26 (2d Cir.1984); *Environmental Defense Fund, Inc. v. Johnson,* 629 F.2d 239, 241 (2d Cir.1980). *Cf. FTC v. Standard Oil Co.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970). Thus, when determining which of the agency's decisions was final, we must consider the practical effect of each order.

In the instant case, G. & T. was assessed a substantial amount of interest. As unamended, the order left entirely ambiguous the total amount of the award. The amended decision thus served as a

material revision of the prior order. When a judgment previously entered has been revised as to substantive matters, or to resolve a genuine ambiguity, the practical effect is to render the later decision final for purposes of review. *See FTC v. Minneapolis–Honeywell Regulator Co.,* 344 U.S. 206, 211, 73 S.Ct. 245, 248, 97 L.Ed. 245 (1952). *Cf. Class v. Norton,* 505 F.2d 123, 125 (2d Cir.1974) (appeal from ruling which merely reiterated portion of prior order was untimely).

An analogous situation was presented by *United States v. F. & M. Schaefer Brewing Co.,* 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed. 2d 721 (1958). In that case, the district court filed an opinion on April 14, 1955 which awarded a money judgment, including interest, in favor of a taxpayer. The decision stated the amount of the principal sum, but omitted dates relevant to the calculation of interest owed. On May 24, 1955, the court entered a "judgment" which supplied what the April 14 opinion had omitted, namely, facts necessary to compute the amount of interest to be awarded. In rejecting the argument that the time to appeal ran from April 14, the Court looked to the actions of the district judge. From the kind of modification made, the Court concluded that the district court had intended to make the later judgment its "final" judgment. 356 U.S. at 232–33, 78 S.Ct. at 677–78.

■ While *Schaefer* was not concerned with agency action, we find its reasoning persuasive here. *Cf. Pepsico, Inc. v. FTC,* 472 F.2d 179, 185 (2d Cir.1972) (determination of finality of agency decisionmaking closely resembles that of finality of court decisions), *cert. denied,* 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973); *see also Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964) (regarding finality under 28 U.S. C. § 1291); *Cohen v. Beneficial Indust. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949) (same). In this case, the prior order lacked a material term, the date from which interest was to be computed. G. & T. therefore could not calculate what it owed. The fact that the

principal sum was indicated in the order did not, of course, alleviate the problem. Recognizing these facts, the Secretary issued a corrected version. The practical effect of the September 22 order was to supersede that of September 11.

In finding that the initial order was "final" for purposes of appeal, the district court looked to whether the September 11 decision settled the practical relationship between the parties. *See Carter/Mondale,* 711 F.2d at 288–89. The district court found that G. & T. was appealing solely from the Secretary's factual determination of liability. Since G. & T.'s appeal was based on the liability finding in the initial order, the court found that order to have been the agency's final action.

It is true that the September 11 decision had some indicia of finality. Insofar as it contained a factual determination of G. & T.'s contractual obligation and liability under PACA, the order was a definitive statement of the agency's position. *See FTC v. Standard Oil,* 449 U.S. at 239, 101 S.Ct. at 493. As such, it presented a legal issue "fit for judicial resolution." *Cf. Abbott Laboratories v. Gardner,* 387 U.S. at 153, 87 S.Ct. at 1518. It does not matter, however, whether G. & T. chose to appeal every part of the Secretary's findings and decision. If the September 11 order was nonfinal, then appeal from that order would have been improper regardless of the *scope* of appellant's appeal. Thus, we also look to the effect of the September 11 decision to determine whether that order was final.

■ Where legal rights and obligations do not flow from an agency's decision, the agency has not taken final action. *Cf. Capital Telephone Co., Inc. v. FCC,* 777 F.2d 868, 870 (2d Cir.1985) (agency action was final where no further administrative proceedings were possible and order determined legal rights and obligations of parties) (citing *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209–10, 27 L.Ed.2d 203 (1970)); *Newsweek, Inc. v. United States Postal Service,* 652 F.2d 239, 242 (2d Cir.1981) (same). In the in-

stant case, neither the Hawmans' full rights nor G. & T.'s full obligations were settled by the initial order.

To illustrate, if G. & T. had failed to comply with the September 11 order, G. & T. could have persuasively argued to the Secretary that without the material term which was omitted from the September 11 order, compliance with that order was impossible. The only consequence of its noncompliance would have been that the Secretary would be required to amend the order. If, on the other hand, G. & T. failed to comply with the September 22 order, it would have lost its license until such time as it complied. Thus, the September 22 order and not the September 11 order mandated G. & T.'s obligation to the Hawmans. *Compare FTC v. Standard Oil*, 449 U.S. at 242, 101 S.Ct. at 494 (issuance of agency complaint which had no legal consequences in of itself was nonfinal) *with Abbott Laboratories v. Gardner*, 387 U.S. at 153, 87 S.Ct. at 1518 (regulations which subjected violators to risk of criminal and civil penalties were final). Accordingly, for all the foregoing reasons, we hold that the September 22 order was the final order in this case.

Although our holding that the September 22 order was final is dispositive of this appeal, we also briefly address the situation posed by the letters sent to G. & T. from the PACA branch. The district court ruled that the letters should not have been used to calculate the thirty day appeal period, characterizing them as "an ill-concocted blend of courtesy and misstatement." We think it is understandable that G. & T. was confused by the letters. We note that the problems presented by this case would have been significantly reduced if the agency had notified both parties of the proper appeal period. Courts have encouraged agencies to inform the parties clearly and accurately when the period for a petition for review begins to run. *See Carter/Mondale*, 711 F.2d at 280. Accordingly, we join the *Carter/Mondale* court in making this recommendation.

## CONCLUSION

We find that the Secretary's amended order of September 22, 1987 was the final agency action in this case. G. & T.'s appeal dated October 22, 1987 therefore was timely filed. Accordingly, we reverse the judgment granting the Hawmans' motion for dismissal, costs and attorneys' fees, and remand to the district court for further proceedings.