Robert **ABRAMS**, Attorney General of the State of New York; Central Brooklyn Coordinating Council, Inc., a New York Not–for–Profit Corporation; Fort Greene Senior Citizens Council, Inc., a New York Not–for–Profit Corporation; National Urban League, Inc., a New York Not–for–Proft Corporation, Petitioners,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent.**

No. 1626, Docket 91–4027.

United States Court of Appeals, Second Circuit.

Argued June 3, 1991.

Decided June 28, 1991.

Susan A. Glover, Dept. of Law, New York City (Robert Abrams, Atty. Gen., of Pamela A. Mann, of counsel), for petitioners Central Brooklyn Coordinating Council, Inc., and Nat. Urban League, Inc.

Daniel L. Alterman, New York City (Alterman & Boop, of counsel), for petitioner Fort Greene Senior Citizens Council, Inc.

Thomas L. Holzman, Counsel, Federal Deposit Ins. Corp., Washington, D.C. (Thomas A. Schulz, Asst. Gen. Counsel, Robert G. Clark, Sr. Counsel, Roger A. Hood, of counsel), for respondent Federal Deposit Ins. Corp.

Before OAKES, Chief Judge, PRATT and ALTIMARI, Circuit Judges.

OAKES, Chief Judge:

In this case, petitioners, the Attorney General for the State of New York (the "Attorney General") and various not-for-profit corporations, seek review of a determination by the Federal Deposit Insurance Corporation (the "FDIC") that New York's not-for-profit corporations neither hold their assets in trust for charitable beneficiaries nor maintain separate accounts in different capacities or for different rights, and therefore are not entitled to more than $100,000 per depositor in federal deposit insurance. Because the FDIC has not adequately explained the basis for its conclusions, and has failed to place documents in the record that are necessary for proper consideration of this dispute, we cannot accurately evaluate the validity of its determination. As a result, we remand with instructions to the FDIC, and retain jurisdiction to decide the merits of the petition at a later date.

## BACKGROUND

This dispute arises out of the financial problems of Freedom National Bank of New York ("Freedom Bank"). After the Comptroller of the Currency declared Freedom Bank insolvent in November 1990, the FDIC informed numerous depositors, including many not-for-profit corporations, that their deposits in excess of $100,000 would not be federally insured. Among the depositors affected by this decision are petitioner Central Brooklyn Coordinating Council, Inc. ("CBCC"), a not-for-profit corporation that operates and funds numerous community-based social services agencies,

petitioner Fort Greene Senior Citizens Council, Inc. ("Fort Greene"), a not-for-profit corporation that operates several day care and senior citizen centers, and petitioner National Urban League, a nationally known not-for-profit corporation that provides social services and advocates on behalf of civil rights. Each of these organizations had maintained numerous deposit accounts in excess of $100,000 at Freedom Bank.

The named not-for-profit corporation plaintiffs, as well as other such corporations not named (collectively, the "not-for-profit depositors"), maintain separate accounts (1) in a fiduciary capacity (2) earmarked for different purposes or (3) earmarked for different sources of funds or year's owing to the source of the funds or (2) and (3). Examples of accounts carried in a fiduciary capacity are tenants' security accounts in Bedford Stuyvesant Restoration Corporation ("BSRC") and escrow accounts in the name of the Concord Nursing Home. Examples of not-for-profit depositors holding earmarked accounts are CBCC's accounts for "Housing Program," "Neighborhood Rehabilitation," "Victim Assistance Program," and Fort Greene's accounts for "In Center," "Weekend Meals," "Breakfast Brunch Program 1990." Examples reflecting different years or sources are BSRC's "DOE/PVE," "HEAP 1990–91," and Fort Greene's "DFA Account 90–91," "Title 20. 1990–91," "DFY 1990," "Contributions and Fundraising" accounts. Examples of depositors holding accounts reflecting a combination of charitable purpose and source of funds are BSRC's "Commercial Revitalization/VIG" and Fort Greene's "USDA-GDC," "Young Minds Day Care USDA." We read the FDIC's actions in this case not to differentiate but rather to aggregate these accounts.

After learning of the FDIC's position, the Attorney General wrote numerous letters to the FDIC requesting that it re-evaluate its position concerning the insurance status of the not-for-profit depositors with multiple accounts at Freedom Bank. According to the Attorney General, these not-for-profit depositors deserved to be insured up to $100,000 on each account rather than per depositor because they did not hold their accounts in their own capacity, but instead as implied trustees for those who ultimately benefited from the funds, and at the least hold earmarked separate accounts for different programs in different capacities. After months of silence, the FDIC finally on March 7, 1991, informed the Attorney General in a two-page letter that, in its view, Freedom Bank's not-for-profit depositors did not hold their assets as "trust funds" or "trust interests" for beneficiaries under 12 C.F.R. § 330.11, and therefore they qualified under 12 C.F.R. § 330.9 for only $100,000 of insurance per depositor. The letter did not differentiate between depositors with earmarked accounts and those without or make any reference thereto. The letter did note, however, that the FDIC was requesting additional information from some of Freedom Bank's depositors in order to determine whether other bases existed to expand insurance coverage.

On or about the time that the FDIC informed the Attorney General of its position, petitioners initiated this suit pursuant to 12 U.S.C. § 1821(f)(4), which authorizes the federal courts of appeals to review final FDIC determinations regarding insured deposits. According to the petition, the FDIC's determination that New York's not-for-profit corporations did not qualify for up to $100,000 of insurance on each account at Freedom Bank is "not in accordance with law." 5 U.S.C. § 706(2)(A). The FDIC responds that we do not have subject matter jurisdiction to hear this petition, and that, in any event, its determination is fully supported by the statutory scheme.

## DISCUSSION

### I. *Jurisdiction*

█ The FDIC argues that subject matter jurisdiction is lacking for three reasons, none of which we find persuasive. First, it asserts that because no federal regulations have been promulgated to resolve deposit insurance claims, 12 U.S.C. § 1821(f)(3) requires a federal district court to decide this dispute before it is presented to a federal court of appeals. This argument, however, misconstrues the unambiguous statutory framework. Under section 1821(f)(3), the

FDIC may resolve a dispute regarding insured deposits either according to its regulations, *see* 12 U.S.C. § 1821(f)(3)(A), or, if such regulations do not exist, by submitting the claim to a court of competent jurisdiction, *see* 12 U.S.C. § 1821(f)(3)(B). Once the FDIC finally resolves a claim, however, the courts of appeals are empowered by section 1821(f)(4) to review the FDIC's determination. Because the FDIC has fully and, to all intents and purposes, finally resolved the claim here, section 1821(f)(4) is controlling, thus making this court the proper forum to evaluate the validity of the FDIC's determination.

The FDIC's next argument—that petitioners are lodging general attacks against the FDIC's policies and regulations rather than claiming as to any particular insured deposits, and therefore do not have a section 1821(f) claim—is easily dismissed. As we read the claim in this case, petitioners are challenging the FDIC's determination that Freedom Bank's not-for-profit depositors do not qualify for insurance on a per account basis. This is a narrow challenge to a specific group of insured deposits that we are authorized to review under section 1821(f).

Finally, the FDIC argues that we do not have jurisdiction over this matter because the FDIC has yet to make a final determination regarding the not-for-profit depositors' insurance coverage. We believe, however, that by refusing to consider the not-for-profit deposits as "trust funds" or "trust interests," the FDIC has unambiguously ruled that it will not insure those deposits on a per account basis. As a result, notwithstanding the FDIC's oblique reference to the possibility of finding some other basis to extend insurance coverage, we find that the FDIC has made a "definitive statement of the agency's position" that is reviewable under section 1821(f)(4). *G. & T. Terminal Packaging Co., Inc. v. Hawman*, 870 F.2d 77, 80 (2d Cir.1989).

## II. *FDIC's Determination*

■ Under an extensive regulatory scheme, the FDIC insures deposit accounts on either a per account or per depositor basis. In determining which is more appropriate, the FDIC looks to who owns and benefits from the funds on deposit. 12 C.F.R. § 330.3(a) (1991). If the deposit accounts in question "are maintained in the same right and capacity;" that is, are maintained "by or for the benefit of a particular depositor or depositors," then they will be aggregated and insured only up to $100,000. *Id.* If, however, the deposits are "maintained in different rights and capacities," then they "shall be insured separately from each other." *Id.*

Because ownership of deposit accounts is a necessary precondition for insurance coverage, the FDIC normally evaluates the ownership laws of the state in which the deposit accounts are located. *See* 12 C.F.R. § 330.3(h) (1991). Such laws, however, do not alone dictate deposit insurance coverage. Rather, to determine deposit account ownership, the FDIC will also evaluate the deposit account records of the depository institution. *Id.* Although it is presumed that deposit account records reflect true ownership of the amounts on deposit, *see* 12 C.F.R. § 330.4(a) (1991), that presumption can be rebutted if the depository records disclose a fiduciary relationship between the depositor and other parties that "might provide a basis for additional insurance." 12 C.F.R. § 330.4(b)(2) (1991). The details of such a fiduciary relationship between the depositor and others can be ascertained, however, only from the deposit account records themselves, or from business records maintained in good faith and in the regular course of business. *Id.*

Unfortunately, the FDIC has failed to follow this regulatory scheme in making its determination regarding Freedom Bank's not-for-profit depositors. Rather, the FDIC's cursory two-page letter to the Attorney General demonstrates that the FDIC simply concluded, without explanation, that because these deposit accounts were not held as "trust funds" or "trust interests," they would not be insured on a per account basis. In our view, this perfunctory analysis is wholly inadequate, and provides very little, if any, basis upon which to conduct a meaningful review the agency's determination.

Thus, pursuant to Federal Rule of Appellate Procedure 16, we remand this case to

the FDIC for a full, written explanation as to why it denied Freedom Bank's not-for-profit depositors insurance on a per account basis. Specifically, the FDIC should address the following matters: (a) whether the not-for-profit depositors hold their accounts "in the same right and capacity" or "different rights and capacities," 12 C.F.R. § 330.3(a) (1991); (b) whether the not-for-profit depositors' ability to identify the beneficiaries of their deposit accounts affects this determination, and if so, why; (c) whether the not-for-profit depositors' legal ownership of the deposit accounts in question precludes the funds in those accounts from being treated like trust funds or other fiduciary accounts, and if so, why; and (d) whether and to what extent New York's restrictions on nor-for-profit deposit accounts affects insurance coverage. In addition, the FDIC should include in the record those deposit account records and other business records that it has reviewed in coming to its determination.

The FDIC is to submit its explanation within sixty (60) days of the filing of this opinion. Jurisdiction is retained.

So ordered.