**Delcio RIVERA–ROSARIO,**
**Plaintiff, Appellant,**

v.

**U.S. DEPARTMENT OF AGRICULTURE**
**and Mike Espy, Secretary, Defendants,**
**Appellees.**

No. 98–1135.

United States Court of Appeals,
First Circuit.

Submitted June 3, 1998.

Decided Aug. 11, 1998.

---

Melva A. Quintana and Demetrio Fernandez on brief for appellant.

Fidel A. Sevillano del Rio, Assistant United States Attorney, and Guillermo Gil, United States Attorney, on brief for appellees.

Before BOUDIN, Circuit Judge,
KEETON[*] and McAULIFFE,[**] District Judges.

PER CURIAM.

This case involves a claim of discrimination by Delcio Rivera–Rosario against the United States Department of Agriculture ("the Department"). In 1963, Rivera began working for the Department in Brooklyn, New York, and three years later was offered a transfer to Puerto Rico. The transfer was conditioned on Rivera signing a waiver renouncing "home leave" benefits that would otherwise have entitled him to special leave and allowances permitting him to return periodically to Brooklyn. Apparently the Department took the position that employees of Puerto Rican origin were—while stationed in Puerto Rico—not entitled to home leave benefits even if their prior employment by the Department began elsewhere in the United States.

After earlier unsuccessful procedural steps, eight employees including Rivera filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in January 1984 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The complainants said that the Department's home-leave policy discriminated against them on grounds of national origin. Under the statute and pertinent regulations issued by the EEOC, the initial responsibility for processing Title VII discrimination complaints by federal employees rests with the employing agency, in this case the Department of Agriculture; if there is a hearing, an independent administrative law judge presides and makes a recommended decision to the employing agency.[1]

Here, after delays due in part to negotiations, a hearing was held before an ALJ in May 1988. The ALJ then ruled from the bench that there had been unlawful discrimination by the Department in limiting home leave benefits for employees of Puerto Rican origin. The ALJ said that all the complainants should have home leave benefits in the future and were entitled to reimbursement for past benefits that had been wrongly withheld.[2] The precise amounts, said the ALJ, depended on the position and former employment history of the individual complainant

---

[*] Of the District of Massachusetts, sitting by designation.

[**] Of the District of New Hampshire, sitting by designation.

1. The statute proscribes Title VII discrimination by federal agencies, and empowers the EEOC to create regulations for complaints by federal employees. 42 U.S.C. § 2000e–16(a), (b). The

EEOC procedures governing complaints, at the time Rosario's complaint was considered, were contained in 29 C.F.R. §§ 1613.212 through 1613.222 (1988).

2. The benefits included travel expenses for home-leave trips and—it appears—extra days of leave for that purpose (e.g., five extra days every two years).

and should be "worked out between the parties."

Under EEOC regulations, the Department then had 60 days to adopt the recommendation, reject it, or modify it. 29 C.F.R. 1613.220 (1988). Apparently because settlement discussions were underway, the Department did not act within the 60–day period; but it did issue a decision in November 1988 adopting the ALJ's finding of discrimination. However, the Department specifically limited the retroactive benefits to a period beginning two years before the filing of the complaint with the EEOC on January 14, 1984.

The eight employees had not awaited this resolution before heading to court. Under the statutory scheme, Congress has permitted a federal employee aggrieved by alleged discrimination under Title VII to sue his or her agency in federal district court if the agency has not afforded the relief sought by the employee within 180 days of the filing of a complaint. 42 U.S.C. § 2000e–16(c). Whether the employee sues immediately after 180 days or awaits the final decision of the agency, the express statutory remedy is the same: the employee can begin the same *de novo* Title VII action in the federal district court that would be available to a private employee subject to unlawful discrimination. 42 U.S.C. § 2000e–16(c), (d).

The eight employees initiated a district court case in the federal district court for Puerto Rico in 1986, and then reactivated it after the Department's November 1988 decision. In October 1989, the plaintiffs filed a motion for summary judgment seeking "enforcement" of the ALJ's May 1988 recommended decision, which they read to provide them relief without the time limitation on reparations proposed by the Department. The Department cross-moved for summary judgment, pointing to a provision in the pertinent Title VII remedies provision expressly limiting "back pay" awards to no earlier than the two-year period before the filing of a formal complaint. 42 U.S.C. § 2000e–5(g)(1).

The district court in July 1990 agreed with the Department, issued an order limiting recovery to the two-year period, and expressed hope that the ruling would help the parties settle the dispute. In May 1991, seven of the eight plaintiffs, but not Rivera, settled with the Department for specified payments, and their claims were dismissed with prejudice. In August 1992, Rivera executed a stipulation of dismissal dismissing his own case without prejudice.

Almost a year later, in April 1993, Rivera brought a new action—from which the present appeal arises—in the same district court to recover for the same "national-origin" discrimination. The case was assigned to the same district judge who had presided over the 1986 action. The court concluded that discrimination was not disputed by the Department, that the only issue was damages, and that the two-year limitation period on back pay did apply to Rivera, as it had to the other seven plaintiffs in the earlier action. After reference to the magistrate judge, the district court found that Rivera was due $21,448.50.

Rivera has now appealed, urging that he is owed $113,864.60—an amount he says is properly owed to him based on the original ALJ recommended determination that contained no two-year limitation on the past period for which reparations would be payable. His main contention is that he is entitled to "enforcement" of the ALJ recommended decision on the ground that it became a final agency decision under EEOC regulations when the Department failed to alter it within 60 days. 29 C.F.R. § 1613.220

Any reader of Title VII's bare language would be puzzled by a reference to an enforcement action. Under the statute, a federal employee who does not receive redress for discrimination from his agency within 180 days is entitled to bring a civil action "as provided in section 2000e–5" against his agency, just like any other employee discriminated against by a private employer. *See* 42 U.S.C. § 2000e–16(c), (d). The Supreme Court has expressly ruled that a federal employee, like a private employee, is entitled to a *de novo* determination in the district court on his or her discrimination claim. *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). In such a case, the

Court can enjoin unlawful discrimination and provide affirmative relief as set forth in the statute. 42 U.S.C. § 2000e–5(g)(1).

Nevertheless, several circuits have taken the view that a federal employee can sometimes initiate a district court action for relief under Title VII without making a *de novo* showing of discrimination.[3] The paradigm case is one in which an employee, dissatisfied with the agency's resolution of the discrimination claim, invokes an alternative review procedure provided by the statute for federal employees, namely, to seek review of the agency's decision by the EEOC itself. *Cf.* 42 U.S.C. § 2000e–16(c). Alternatively, an agency might, at least in theory, decide a discrimination claim in favor of an employee, adopt a remedy, and then fail to carry through with its commitment.

■ In some such cases, several circuits have indicated that the employee may be able, in the district court action, to rely upon whatever final agency determination has been secured and *obtain enforcement from the district court without a de novo showing of discrimination* or, in the alternative, argue that the district court should accept the finding of discrimination but provide even greater relief. This circuit has not previously addressed this issue, and we have no occasion to do so here. Rivera's theory depends entirely on the proposition that the ALJ decision is a "final" agency action that might be reviewed or enforced on its own.

■ A final decision in an adjudicatory proceeding is one that resolves not only the claim but, if liability is found, also the relief to be afforded.[4] Here, the ALJ explicitly contemplated, but declined to award, specific reparations pending negotiations; so, the ALJ's recommended decision was not a final decision resolving the controversy between the Department and Rivera. The EEOC's

regulation requiring the agency to act within 60 days might—or might not—convert *an otherwise final* ALJ decision into a final decision of the agency charged with discrimination; but it obviously cannot supply finality to an ALJ decision that is itself not sufficiently complete to stand on its own.

Accordingly, since there is no claim that the ALJ ever entered an order prescribing a specific dollar award for Rivera. there is no final ALJ decision to "enforce." There may or may not be a final decision of the Department—it has been described to us but no one has troubled to supply us a copy—but Rivera has never expressed any interest in enforcing the Department's decision, which he says provided him inadequate relief. Finally, there is no EEOC decision to enforce since Rivera never sought review of the Department's decision before the EEOC.

What Rivera is therefore left with is a district court decision that treated his case as an ordinary *de novo* action under Title VII, accepted the Department's concession of discrimination, and then made a specific award based on reparations. Apart from his mistaken proposal to "enforce" the ALJ recommended decision, Rivera has made no effort to show that the district court's award is mistaken either in the specific amount selected or in the adoption of a "two-years back" restriction on the award. It is Rivera's job to identify and explain the basis for error in the judgment he purports to attack.

■ Title VII does provide that "back pay" liability may not accrue from a date "more than two years prior to the filing of the charge" with the EEOC. 42 U.S.C. § 2000e–5(g)(1). If Rivera had chosen to brief the issue, we might be faced with the interesting question whether the provision just cited applied to the home-leave allow-

3. *See Girard v. Rubin,* 62 F.3d 1244, 1247 (9th Cir.1995); *Haskins v. United States Department of the Army,* 808 F.2d 1192, 1199 & n. 4 (6th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987); *Pecker v. Heckler,* 801 F.2d 709, 711 n. 3 (4th Cir.1986); *Moore v. Devine,* 780 F.2d 1559, 1562–63 (11th Cir.1986)

4. *See Teledyne Continental Motors v. United States,* 906 F.2d 1579, 1582 (Fed.Cir.1990) (Armed Services Board of Contract Appeals); *G.*

*& T. Terminal Packaging Co. v. Hawman,* 870 F.2d 77, 80 (2d Cir.1989) (Secretary of Agriculture). The connection with the settled rule in civil cases generally, that no final appealable decision exists unless the dollar amount of liability is determined, has been remarked. *Freeman United Coal Mining Co. v. Director, Office of Workers' Comp. Programs,* 721 F.2d 629, 630 (7th Cir.1983).

ances that Rivera seeks, as the district court held. However, Rivera has chosen not to brief the issue in this court, and it is therefore waived—even assuming that it is not foreclosed by the district court's prior decision which Rivera did not seek to appeal.

Finally, Rivera's brief makes what is scarcely more than a glancing reference to what is popularly known as the Back Pay Act, 5 U.S.C. § 5596. Rivera refers to the statute in one sentence as a general mandate for reparations without a "two-years back" limitation on his Title VII award. The Supreme Court has indicated that where the gravamen of the claim is Title VII discrimination, the only remedy available is under Title VII. *See Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In all events, Rivera makes no effort to develop his argument under the Back Pay Act, and any such claim is waived.

*Affirmed.*

KEETON, District Judge, dissenting in part.

The outcome on the merits that results from the Per Curiam affirmance is quite likely to be an appropriate outcome because all parties consent. Indeed, they may have done so already and, if not, might do so quickly on remand to avoid pouring more resources into this ill-starred controversy.

A distinct possibility remains, however, that this roughly $25,000 award of damages (including some but not all interest claimed) is not the most appropriate outcome on the merits. I respectfully dissent in part because in my view we should not order this result on the record before us. Doing so disregards on preclusionary grounds two possibilities that we should take into account. First, if ordered to reach a final disposition on plaintiff-appellant's claim, the Department of Agriculture might award him more or less, and the district court on review might affirm that different award. Second, on the record before us, a doubt remains as to the jurisdiction of the district court to adjudicate the merits *de novo* rather than limiting itself to ordering the DOA to reach a final disposition and then judicially reviewing the agency decision if either party so requested.

In general, United States district courts are courts having only the limited jurisdiction conferred upon them by the Constitution or by constitutionally authorized Acts of Congress, signed by the President or enacted over his veto. Conduct of the parties to a controversy that might warrant preclusion of other kinds of contentions cannot bar a challenge to subject-matter jurisdiction, or authorize the district court to forego its own obligation to take note of relevant limitations on its subject-matter jurisdiction even if no party has raised the issue.

The jurisdictional doubt that concerns me is based on what Professor Geoffrey Hazard, as Director of the American Law Institute, referred to as "ambivalence" of constitutional and statutory mandates, and interpretive precedents, about "the scope of jurisdiction of the federal district courts." American Law Institute, Federal Judicial Code Revision Project, Tentative Draft No. 2 ix (April 14, 1998). The more particular concern relevant to this appeal arises from tension between the possibly decisive implications of *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), which the Per Curiam opinion takes as decisive of jurisdiction in this case, and other statutes and precedents. *Chandler* came to the Court before the statute that defined the trial court's jurisdiction was amended to confer on EEOC an authority like that the statute had conferred on the Civil Service Commission before amendment. Both the earlier statute and the amended statute authorized the agency to issue regulations. Most of the regulations issued by EEOC track those previously issued by CSC, but EEOC also issued additional regulations regarding the agency's (here DOA's) obligation to reach a final decision. *See* 29 C.F.R. § 1613.281(d) (1988) (An agency decision is final "only when the agency makes a determination on all of the issues in the complaint . . . ."); *see also* 29 C.F.R. § 1613.221 (1988).

The policy choice about whether district courts shall have plenary jurisdiction over the merits of employment disputes that have previously been before an agency is one preferably resolved by Act of Congress. Especially is this so in view of current controversy

over many other proposals for expanding or limiting the jurisdiction and workload of federal courts. One may hope that Congress will take note of conflicting implications regarding the relatively smaller concern involved in this appeal as well as the issues of larger consequence that are being explored in the ALI Project.

In any event, in these circumstances I believe the wiser course is not to reach any doubtful issue about subject-matter jurisdiction that might be resolved more easily on a better record. I favor a remand to the district court for further proceedings rather than affirmance on the present record.